COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia

JEFFREY ALLEN MORRIS
                                              OPINION BY
v.  Record No. 1423-94-2          JUDGE JAMES W. BENTON, JR.
                                           DECEMBER 5, 1995
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge

        Willis J. Spaulding for appellant.

        Robert H. Anderson, III, Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.



     Jeffrey Allen Morris was convicted of two counts of

discharging a firearm from a motor vehicle so as to create the

risk of injury or death to another person in violation of Code

§ 18.2-286.1.  He contends that the evidence was insufficient to

sustain the convictions.  For the reasons that follow, we

reverse.

                                I.

     The evidence proved that after 11:45 p.m., Aretha Watkins

was driving thirty-five to forty miles per hour on a two lane

rural highway.  The posted speed limit was fifty-five miles per

hour.  Watkins testified that the highway had many curves and she

was not in a hurry.  Paul Williams sat in the passenger seat and

conversed with Watkins.  Williams' daughter was sleeping in the

back seat.

     Morris was driving on the highway and began to follow

Watkins.  Watkins testified the automobile was close on her

bumper. Williams said it was "a couple of car lengths" behind. The highway had solid yellow lines that prohibited passing. After following Watkins' automobile for five miles, Morris passed her.

As Morris' automobile was passing, a passenger in Morris' automobile made an offensive finger gesture. Morris' automobile continued on the highway. When Watkins traveled several miles down the road, she noticed that Morris' automobile had come almost to a stop in the road. Watkins began to slow down.

Williams observed a rifle barrel come out of the driver's side of Morris' vehicle. Williams testified that the gun was fired twice toward the woods. He observed that the gun was pointed perpendicular to Morris' automobile and not toward the automobile he occupied. After the shots, Morris' automobile sped away. Williams stated that he and Watkins were upset and Watkins felt nauseous.

Watkins heard and saw the gunfire. She also saw the gun barrel being withdrawn after the firing but did not see the barrel come out of the car initially. Watkins testified that she "panicked" after the gunfire and wrote down the license number of Morris' automobile.

A witness testified that he saw Morris later that night. Morris stated in the witness' presence that "he was coming down Route 20 South and there was a car that was tailgating him and to stop the car from tailgating he held a rifle out the window and

fired it."  Morris said that after the gun was fired "the car got off his bumper."

At the conclusion of the evidence, the jury was instructed on the elements of the offense as follows:

> The defendant is charged with the crime of shooting from a vehicle.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant intentionally discharged a firearm while in or on a motor vehicle; and
> (2) That the defendant thereby created a risk of injury or death to Aretha Watkins.

A similar instruction was given naming Williams as an object of the offense.  The jury found "Morris, guilty of shooting from a vehicle and thereby creating a risk of injury or death to Aretha Watkins" and Paul Williams.

## II.

Morris was indicted and tried for violation of the following statute:

> Any person who, while in or on a motor vehicle, intentionally discharges a firearm so as to create the risk of injury or death to another person or thereby cause another person to have a reasonable apprehension of injury or death shall be guilty of a Class 5 felony.  Nothing in this section shall apply to a law-enforcement officer in the performance of his duties.

Code § 18.2-286.1.  However, the jury was instructed only that the elements of the offense were "intentionally discharg[ing] a firearm while in . . . a motor vehicle . . . thereby creat[ing] a

risk of injury or death."[1]  The instruction as drafted and given to the jury charged one of the two possible offenses specified within Code § 18.2-286.1 in the disjunctive.  It became the law of the case.  See Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616, cert. denied, 498 U.S. 908 (1990); Owens-Illinois, Inc. v. Thomas Baker Real Estate Ltd., 237 Va. 649, 652, 379 S.E.2d 344, 346 (1989).

The evidence proved that while Morris was in the automobile he discharged a gun in the direction of woods.  The gun was pointed out the driver's side of the automobile and was held perpendicular to the side of the automobile while it was fired into the woods adjoining the highway.  The evidence further proved that Watkins and Williams were in an automobile travelling behind Morris' automobile.  Williams' testimony clearly established that the gun was not aimed at or in the direction of the automobile occupied by Watkins and Williams.  Although Watkins and Williams both testified that they were upset by the incident and that Watkins "panicked," this evidence tended to prove apprehension in Watkins and Williams.  However, that aspect of Code § 18.2-286.1 was not charged in instructions to the jury

_____

[1]The jury was not instructed that a violation of the statute could also be found upon proof that Morris, "while in a motor vehicle, intentionally discharge[d] a firearm so as to . . . thereby cause another person to have a reasonable apprehension of injury or death."  Code § 18.2-286.1.  The failure to so instruct the jury may be traced, in part, to Model Jury Instructions No. 19.350, which does not contain language informing the jury that an element of the crime may also be established by proof of that conduct.

- 4 -

as an element of the offense.

The evidence showed that Watkins' vehicle was in the same lane of travel and behind Morris' vehicle. No evidence proved the distance between the two automobiles. The evidence proved that Watkins was not attempting to pass Morris' automobile when the gun was discharged. No evidence proved that Watkins' driving was affected by the shooting. The evidence failed to prove beyond a reasonable doubt that a risk of injury or death to Watkins or Williams arose by virtue of the gun being discharged into the woods.

Accordingly, the convictions are reversed.

<u>Reversed</u>.