COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Russell and AtLee
Argued at Richmond, Virginia

PUBLISHED

MANNEH VAY

v.      Record No. 0053-16-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
JANUARY 31, 2017

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Edward L. Hogshire, Judge

Charles L. Weber, Jr., for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Manneh Vay, appellant, was convicted, in a jury trial, of rape in violation of Code § 18.2-61,

sodomy in violation of Code § 18.2-67.1, and abduction with intent to defile in violation of Code

§ 18.2-48. On appeal, he argues that the trial court erred in 1) denying appellant's motions to strike

the evidence of abduction, 2) refusing to give a proposed jury instruction on the law of incidental

detention, 3) failing to conduct *voir dire* on whether appellant voluntarily waived his right to testify,

4) refusing to strike a juror for cause, and 5) its response to questions from the jury. For the reasons

stated below, we affirm.

BACKGROUND

Underlying Facts

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below." Smallwood

v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v.

Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). This principle requires us to

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

So viewed, the evidence established that, on September 22, 2012, the victim, L.S., then a seventeen-year-old college student, attended a party in Charlottesville. The party was crowded, and many of the guests were dancing. L.S. initially danced with her friends, but because of the crowd, she became separated from her friends and began dancing with appellant. While dancing, appellant grabbed L.S. by the waist and pushed her toward a wall. He then attempted to lift up her skirt. L.S. characterized appellant as becoming "really forceful" and testified that she intended to "just get away from [appellant]" when the song ended. Before she had a chance to leave, appellant removed his penis from his pants, grabbed her hand, and forced her to touch him. When the song ended, L.S. attempted to move away from appellant, but he grabbed her by the waist and pushed her through the crowd of people. She explained at trial:

> [T]here is a guy that I don't know leading me somewhere, who knows where I'm going and he has, like, control in a sense. I don't know how to explain it, but he is using a lot of force and I know he's using a lot of force because there's [sic] so many people in that party for him to be able to push me through people. I meant literally people were---I was---my shoulders were bumping against people, . . . imagine, I don't know, there's a crowd of people around you and, you know, you're trying to get to the front of the line or something and you have to use a lot of force to get through people or else people won't move, so that's what he was doing.

Appellant pushed L.S. through the kitchen, down a hallway, and into a bathroom, a distance of forty feet. Appellant immediately locked the bathroom door behind them and tried to remove L.S.'s skirt. L.S. tried to push his hands away and repeatedly asked him to "please stop." Appellant responded by telling her that she would enjoy it.

Appellant eventually ripped off L.S.'s skirt and underwear. He then unsuccessfully tried to penetrate L.S. from behind. Appellant pushed L.S. to the floor and pinned her down with his body. L.S. struggled against him, repeatedly telling him to stop. Despite her efforts to resist, appellant was able to penetrate her vagina with his penis and later with his tongue. L.S. also testified that, at one point, appellant "pushed [her] shirt down and pushed [her] bra down and . . . started sucking on [her] nipple . . . using so much force [that it was] . . . painful," which caused her to scream.

After he was finished, appellant asked L.S. for her telephone number. L.S. swore at appellant, left the bathroom, and eventually found her friends and called police.

Charlottesville Police Officer Tara Sanchez responded to the call of a possible sexual assault. Officer Sanchez arrived at the scene within a minute of the call and found L.S. lying on the ground with a "disconnect[ed] look on her face." She appeared as though she had been crying and was breathing heavily. Officer Sanchez described L.S. as being in "almost a hyperventilating state." L.S. did not appear intoxicated. L.S. gave Officer Sanchez a detailed account of the events that just had taken place and described appellant.

Kathryn Laughon, Ph.D., an associate professor of nursing at the University of Virginia, testified as an expert in the field of sexual assault injuries. She was called to the emergency room on September 23 at 2:30 a.m. to meet with and examine L.S. She described L.S. as tearful and upset, but cooperative. Laughon observed bruising and redness on L.S.'s lower legs, but was unable to conduct a complete exam because L.S. complained of pain.

<u>Pre-Trial Hearing</u>

The matter was scheduled to be tried on June 10, 2013. Shortly before the trial was scheduled to commence, appellant moved to continue the trial date. The trial court convened a hearing on appellant's motion for continuance on June 4, 2013.

At the hearing, appellant, by counsel, explained that certain witnesses he wished to call had not been subpoenaed successfully and one would be out of the country on June 10th. During the hearing, it was revealed that counsel only recently had been in touch with these potential witnesses and had sought to compel the attendance of the witnesses only recently. In attempting to explain why he previously had not sought issuance of the subpoenas, appellant's counsel indicated that he was limited in what he could say because the decision to seek the witnesses was related to "our trial strategy[, which] has been evolving."

The trial court responded by noting that it did not want appellant to have to reveal anything protected by the "attorney/client privilege or [reveal trial] strategy." The trial court asked if the Commonwealth would allow him to discuss the issue with just appellant and his counsel so the court would be fully aware of the reasons for the requested continuance but "any [trial] strategy wouldn't be disclosed to the Commonwealth . . . ." The trial court made clear it would take this step "only if the Commonwealth doesn't object."

The Commonwealth did not object, and the courtroom was cleared. The trial court noted that "for the record, the Commonwealth has left and nobody is left in the courtroom other than the bailiff, [appellant], [appellant's counsel], the court reporter, [and] the clerk." At that point, appellant's counsel indicated that the witnesses in question were being sought to testify about certain aspects of the party, *e.g.*, how people ended up there, the lighting, the physical layout of the premises, etc.

The reason counsel had not sought the attendance of the witnesses before was that appellant could testify about these issues; however, according to counsel, the defense recently had decided that appellant *would exercise his right not to testify*, thus requiring other witnesses to establish the facts counsel had planned to elicit from appellant. Specifically, counsel told the trial court that

> [w]e came to a point where I had a fairly frank discussion with [appellant] and said it might be in his best interest to consider not testifying at trial. That was fairly recent, after I've had several meetings with [appellant] and came to the conclusion---we came to that conclusion [that he would not testify].

Although present in the courtroom without any opposition present, appellant gave no indication that counsel's statement was anything less than absolutely accurate. Based on the representations in the closed hearing, the trial court granted appellant's motion for a continuance.

Trial

During *voir dire*, the Commonwealth asked whether anyone served as a volunteer for groups that worked with the victims of sexual assault. One juror, a sociology professor at the University of Virginia who is affiliated with Women and Gender Studies at the University, stated that she had supervised students who were involved with the local Sexual Assault Resource Agency and had done research projects on the issue of sexual assault. The juror was asked if she would be able to "sit impartially" and make a decision in the case based solely on the evidence presented. She responded, "Yes." Although both parties asked additional specific questions about her ability to be impartial, the juror continued to maintain consistently that she could be impartial and that, if seated, she would decide the case on the evidence presented.

Appellant objected to seating the juror because "her extensive experience with sexual assault cases and having her students volunteer with various programs has led her to a bias against the defendant." The court overruled the motion, stating that the juror was "unwavering

- 5 -

and very credible" and that he "was listening carefully to see if there's any hesitation and [there] was none . . . ."

After the Commonwealth presented its evidence and rested its case, the trial court asked appellant's counsel, "[Y]ou've discussed with your client his right to testify and his right not to testify?" Appellant's counsel responded, "Yes, Your Honor." The trial court asked if appellant was exercising his right not to testify, and appellant's counsel replied, "I believe so, Your Honor" and "I haven't discussed that with him very recently, so I will discuss that with him again." The trial court stated, "That's fine, . . . I want to give you ample time to do that and so we will take a recess and let us know when you're ready." Appellant was present in the courtroom during the exchange. After the recess, appellant's counsel made a motion to strike the abduction with the intent to defile charge. The trial court denied the motion.

Appellant then called one witness and rested his case at the conclusion of that witness' testimony. Appellant did not testify.

Having rested his case, appellant renewed his motion to strike. Both appellant and the Commonwealth reasserted the arguments that had been made when the motion to strike had been made at the close of the Commonwealth's evidence. The trial court again denied the motion to strike.

After deliberating during the guilt phase, the jury returned guilty verdicts on all three charges.

### Jury Sentencing Phase

During the sentencing phase of the trial, the jury sent the following questions to the trial court: "Do these 3 sentences run concurrently?" and "Can we recommend that the sentences be served concurrently?" The trial court stated to counsel, outside the presence of the jury, "I think the whole answer is that they don't have the authority to . . . recommend they run concurrently."

- 6 -

The trial court then asked appellant's counsel, "Do you agree with that?" Appellant's counsel replied, "I think that's right, Judge." The trial court proposed, "We could say imposing concurrent sentences is not within the province of the jury." Appellant's counsel stated, "Yes, that sounds right." The Commonwealth agreed. The record indicates the trial court wrote the response and sent it to the jury room. For the guilty verdicts on the abduction with the intent to defile, rape, and sodomy charges, the jury recommended sentences of twenty years, five years, and five years respectively.

### Post-Trial

In a post-trial hearing, appellant indicated that he wanted to testify at trial, but because his counsel had advised him against it, he did not. Counsel moved to withdraw, and the trial court appointed new counsel. At sentencing, appellant repeated his desire to have testified at trial. At that time, the trial court imposed the jury's sentences for the three convictions; however, the trial court ordered that both the rape and sodomy sentences be run concurrently with the longer sentence for the abduction with the intent to defile conviction.

Appellant noted his appeal to this Court, and now asserts the following assignments of error:

> 1. The trial court erred in denying [appellant]'s motion to strike the evidence of abduction because the court, without finding facts or analyzing the law, concluded that the issue was a matter for the jury.
>
> 2. The trial court erred in denying [appellant]'s proposed jury instruction on the law of incidental detention.
>
> 3. The trial court erred in denying [appellant]'s Constitutional right to testify on his own behalf by failing to conduct a *voir dire* to establish on the record whether he had knowingly and intelligently waived such right.
>
> 4. The trial court erred in refusing to strike for cause a juror with extensive experience teaching and supervising students at the

University of Virginia in areas involving sexual assault from a female perspective.

5. The trial court erred in answering two jury questions with an incomplete and misleading statement of the law which violated [appellant]'s fundamental right to a jury trial.

ANALYSIS

I. The Trial Court's Ruling on the Motion to Strike

Appellant argues that the trial court erred in denying his motion to strike the abduction with the intent to defile charge. Specifically, appellant argued below that there was insufficient evidence of

> force, intimidation, [or] deception, [or] any kind of seizing, transporting, [or] detaining of the alleged victim in this case. The evidence was that she was with [appellant], in front of him, that he kind of had his hands on her hips and was pushing her. I'm not sure that would count as any kind of transport or seizure. As far as the situation inside the bathroom, the door was shut but with regard to her being locked in, any kind of seizure or detention at this point, . . . anything that happens there is sort of contained within the rape allegation . . . .

We review appellant's challenge to the trial court's denial of his motion to strike under familiar principles. In the context of a jury trial, a trial court does "not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a *prima facie* case for consideration by the fact finder." Hawkins v. Commonwealth, 64 Va. App. 650, 657, 770 S.E.2d 787, 790 (2015). Accordingly,

> [a] motion to strike challenges whether the evidence is sufficient to submit the case to the jury. What the elements of the offense are is a question of law that we review *de novo*. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong. In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom. After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In sum, if there is evidence to support

- 8 -

> the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial.

Linnon v. Commonwealth, 287 Va. 92, 98, 752 S.E.2d 822, 825-26 (2014) (citation omitted).

Here, the trial court correctly concluded that the Commonwealth had adduced more than sufficient evidence, *if believed by the factfinder*, to support the elements of abduction with the intent to defile.[1] In the first part of his motion to strike, appellant argued that there was no evidence of the necessary "force, intimidation, [or] deception, [or] any kind of seizing, transporting, [or] detaining" of L.S. L.S. testified that appellant forced her into the kitchen, down a hallway, and into a bathroom, a distance of forty feet, against her will through the use of physical force, *i.e.*, he placed his hands on her waist, and pushed her through the crowd against her will. He continued pushing until he had pushed her into the bathroom, where he locked the door. Her testimony made clear that his actions created a state of both shock and fear. This testimony, if believed by the factfinder, is more than sufficient to allow the factfinder to make a finding of seizing, taking, transporting or detaining by force or intimidation, and thus, the trial court did not err in denying the motion to strike in this regard.

Appellant also argued that the abduction with the intent to defile charge was not supported by the evidence because any detention was incidental to the sex crimes, and therefore, was subsumed within those charges. We disagree.

We acknowledge that "the General Assembly 'did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act,

---

[1] The elements of abduction with the intent to defile are that the perpetrator "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge," Code § 18.2-47, "with intent to defile such person." Code § 18.2-48. Although appellant's motion to strike raised two arguments, both focus on the abduction elements found in Code § 18.2-47 as opposed to the "intent to defile" element found in Code § 18.2-48.

punishable as a separate offense.'" Hoyt v. Commonwealth, 44 Va. App. 489, 492, 605 S.E.2d 755, 756 (2004) (quoting Brown v. Commonwealth, 230 Va. 310, 314, 337 S.E.2d 711, 713 (1985)). Rather, for abduction to be punishable as a separate offense, the detention must be "separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime." Brown, 230 Va. at 314, 337 S.E.2d at 713-14; Wiggins v. Commonwealth, 47 Va. App. 173, 180-81, 622 S.E.2d 774, 777 (2005).

We previously have recognized various factors to consider in determining whether an abduction is merely incidental to some other crime. In Hoyt, we observed that

> [t]hose factors are: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

44 Va. App. at 494, 605 S.E.2d at 757 (citations omitted). Without overruling Hoyt, the Supreme Court has held that, regarding claims that the detention was inherent in another charged offense, "[t]he only issue . . . is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." Lawlor v. Commonwealth, 285 Va. 187, 225, 738 S.E.2d 847, 869 (2013).

Here, the Commonwealth's evidence, if credited, was more than sufficient to establish an abduction that was not merely incidental to the rape and sodomy. As the Supreme Court has stated, "we have acknowledged some degree of *detention* to be inherent in rape, robbery, and assault but we have not indicated that any *asportation* of the victim is similarly inherent." Id. at n.13, 783 S.E.2d at 869 n.13 (citations omitted). Here, using physical force, appellant moved L.S. forty feet through a crowd of people and into multiple rooms against her will. We previously have held that this amount of asportation is sufficient to support an independent

- 10 -

conviction for abduction without being subsumed by another offense. See, e.g., Massey v. Commonwealth, 67 Va. App. 108, 136 n.14, 793 S.E.2d 816, __ n.14 (2016) (holding that a defendant "preventing [the victim] from leaving the [studio] apartment and dragging her [from the front door] to the bed" where she was raped supported an abduction with the intent to defile conviction independent of the rape); Smith v. Commonwealth, 56 Va. App. 711, 723, 697 S.E.2d 14, 19 (2010) (finding that "slight" asportation occurring from defendant "lur[ing the victim] into his home and into his bedroom by placing her under the false impression that [someone else] was in the bedroom and wanted to see her" was sufficient asportation to support abduction with intent to defile conviction even though the attempted rape occurred almost immediately after the victim entered the bedroom); Wiggins, 47 Va. App. at 189, 622 S.E.2d at 781 (finding that "the victim [being] forced to walk approximately 'twenty-three feet' to the front cash register and then approximately 'eight feet' to the drive-through cash register, for a total of thirty-one feet . . ." was sufficient asportation to distinguish it from cases where we found the abduction merely incident to a robbery).

Additionally, we note that appellant's moving L.S. from the party's main room to a private area and locking the door further establishes an abduction separate and apart from the physical restraint necessary to accomplish the rape and sodomy. Although being in a private area where people could not intervene or see may have aided in the commission of the rape and sodomy, moving to the bathroom and appellant's locking of the door were not *necessary* to accomplish the rape and sodomy, and therefore, such actions were part of an independent abduction and not merely detention incident to the rape and sodomy. See Coram v. Commonwealth, 3 Va. App. 623, 626, 352 S.E.2d 532, 533-34 (1987) (holding that defendant transporting the victim "from a location that was lighted and visible from the street to one out of sight of potential passersby, or others who might leave or enter the victim's apartment [was

- 11 -

sufficient] asportation [to support abduction conviction because it] substantially increased the risk of harm to the victim by decreasing the possibility of detecting his criminal activity"). Given that the Commonwealth's evidence, if believed by the jury, was more than sufficient to support a conviction for abduction with the intent to defile, the trial court did not err in denying the motion to strike.

Despite the foregoing, appellant maintains the trial court still erred regarding the motion to strike. Appellant notes that we stated in Hoyt that

> [w]hether an abduction is merely incidental to another crime is a question of law. However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case. We defer to the trial court's findings of historical fact, but we review *de novo* the trial court's application of those facts to the law.

44 Va. App. at 496 n.4, 605 S.E.2d at 758 n.4. Citing the trial court's statement, in denying the motion to strike, that "it's a jury issue," appellant argues that

> the trial court failed to follow established Virginia law and simply concluded that the matter was a jury question rather than a matter of law. The trial court neither knew nor correctly applied Virginia law regarding incidental detention. Thus, the trial court found no set of historical facts upon which the appellate courts might rely and failed to address the factors cited in Hoyt to determine whether [appellant] could be subject to two convictions (abduction and rape) or only one conviction (rape).

We do not read the trial court's statement as appellant does. Appellate courts do "not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). In the context of the motion to strike, the trial court's statement that "it's a jury issue" correctly recognizes that the jury, as factfinder, makes the ultimate determination whether or not the events actually occurred. Implicit in the trial court's denial of the motion to strike is a finding that, *as a matter of law*, the

- 12 -

Commonwealth's evidence, if believed by the jury, was sufficient to support separate convictions for abduction with the intent to defile and rape and sodomy. Such a conclusion is the *sine qua non* of a denial of a motion to strike in the jury trial setting. See Linnon, 287 Va. at 98, 752 S.E.2d at 825 (noting that "[a] motion to strike challenges whether the evidence is sufficient to submit the case to the jury"); Hawkins, 64 Va. App. at 657, 770 S.E.2d at 790 (holding a trial court does "not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a *prima facie* case for consideration by the fact finder").

As noted above, the evidence, if believed by the jury, was sufficient as a matter of law to support a separate conviction for abduction with the intent to defile. The trial court's recognition that the jury was the ultimate factfinder does not mean the trial court failed to reach this conclusion or otherwise abdicated its responsibility under our decision in Hoyt. Accordingly, the trial court did not err in denying the motion to strike.

II. Appellant's Requested Jury Instruction on Incidental Detention

Appellant argues the trial court erred in refusing his proposed jury instruction on the issue of incidental detention.[2] We disagree.

---

[2] Appellant requested that the trial court give the following instruction:

> I have previously instructed you that to find the Defendant guilty of the crime of abduction with intent to defile, you must find that he did "seize, take, transport, or detain" L.S. In most cases of rape or sodomy, there will be some seizure or movement or detention of the alleged victim. In order to find the Defendant guilty of abduction with the intent to defile in this case, you must find that any seizure or movement or detention was not merely incidental to another crime. In deciding whether the seizure or movement or detention is incidental to another crime, you should consider: (1) the duration of the seizure, movement or detention; (2) whether the seizure, movement or detention occurred during the commission of a separate offense; (3) whether the seizure, movement or detention which occurred is inherent in the separate offense; and (4) whether the seizure, movement or detention created a significant danger to the victim independent of that posed

"As a general rule, the matter of granting and denying [jury] instructions . . . rest[s] in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). "This Court's 'sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Bell v. Commonwealth, 66 Va. App. 479, 486, 788 S.E.2d 272, 275 (2016) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." Lawlor, 285 Va. at 228-29, 738 S.E.2d at 871. We recognize, however, that there are certain issues for which a jury instruction can never be appropriate because they represent questions of law that the trial court, and not the jury, must resolve. See Fitzgerald v. Commonwealth, 249 Va. 299, 305, 455 S.E.2d 506, 510 (1995) ("Questions of law lie within the sole province of the court. As we have stated: 'It is, indeed, a maxim of the law, almost coeval with the institution of juries, that it is the office of the judge to respond as to the law, and the jury as to the facts, and few rules are more essential in the administration of justice.'" (quoting Brown v. Commonwealth, 86 Va. 466, 471, 10 S.E. 745, 747 (1890))).

Under existing Virginia precedent, whether particular circumstances support an independent conviction for abduction as opposed to the detention being merely incident to another offense presents just such a legal question. As noted above, this Court in Hoyt stated that "[w]hether an abduction is merely incidental to another crime is a question of law." 44 Va. App. at 496 n.4, 605 S.E.2d at 758 n.4. The Supreme Court has adopted this position expressly, holding that "whether the detention established by the evidence is the kind of restraint which is *an intrinsic element* of crimes such as rape, robbery, and assault is a question of law to be

_____

by the separate offense. Hoyt v. Com., 44 Va. App. 489, 494, 605 S.E.2d 755, 757 (2004).

- 14 -

determined by the court. Accordingly, the court did not err in denying the instruction." Lawlor, 285 Va. at 229, 738 S.E.2d at 871. For the same reason, the trial court in this case did not err in refusing appellant's proffered instruction regarding incidental detention.[3]

Recognizing that the language in Hoyt is potentially fatal to his position, appellant advances two arguments to avoid such a result. First, relying again on the trial court's statement in denying the motion to strike that "it's a jury issue," he argues that "the trial court's ruling that the incidental detention issue was a factual matter to be decided by the jury became the law of the case even if that law was in conflict with the Hoyt precedent." This argument fails, because, as noted above, we do not read the trial court's statement as appellant does. In the context of the ruling on the motion to strike, the trial court's statement is correctly understood as recognizing *both* the role of factfinder that the jury plays and that, if believed, the evidence was sufficient *as a matter of law* to support an independent conviction for abduction with the intent to defile. Given our view of the trial court's statement, the trial court did not alter or amend existing law, and therefore, appellant's law of the case argument necessarily fails.

Alternatively, appellant argues that we "should overrule Hoyt, reverse [appellant]'s convictions and remand the matter to the trial court for a new trial with clear and concise

---

[3] Appellant stresses that in refusing the proposed instruction, the trial court noted that "[i]t's not a model jury instruction." See Code § 19.2-263.2 ("A proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions."). The trial court's full stated reason was that "It's not a model jury instruction. *It might be appropriate in terms of a legal argument that someone might make. It's not appropriate to give the jury case law and have them interpret that. That's not what their role is* and it's not a model jury instruction . . . ." (Emphasis added). Even if we assume that the trial court's sole basis for refusing to give the proposed instruction was that it was not a "model instruction," that does not constitute reversible error. For the reasons stated above, the trial court correctly refused the instruction, and thus, would, at worst, be right for the wrong reason. Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992) ("An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.").

instructions for the jury."[4]  In making this argument, appellant notes that, in the past, members of this Court have been critical of Hoyt.  See, e.g., Wiggins, 47 Va. App. at 193, 622 S.E.2d at 783 (Kelsey, J., concurring in judgment) (noting that the rule of "Hoyt has produced an anomaly difficult to describe and harder still to administer").

Such criticism, no matter how valid, does not legitimize appellant's request that we overrule Hoyt.  As a published decision of a prior panel of this Court, Hoyt is binding on us and controls our resolution of this issue.  Butler v. Commonwealth, 64 Va. App. 7, 12, 763 S.E.2d 829, 832 (2014) ("Under the interpanel accord doctrine, [a subsequent panel] lack[s] the authority to revisit" prior published opinions of the Court of Appeals.); Startin v. Commonwealth, 56 Va. App. 26, 39 n.3, 690 S.E.2d 310, 316 n.3 (2010) (*en banc*) (noting that published panel opinions of the Court of Appeals "bind all other three-judge panels under the interpanel accord doctrine . . .[; however,] they do not bind the Court sitting *en banc*").[5]

--------

[4] Citing Apprendi v. New Jersey, 530 U.S. 466 (2000), appellant argues that Hoyt is incorrectly decided because it requires a judge rather than the jury to make a factual determination as to whether the abduction is merely incident to another crime.  Once again, this misunderstands the inquiry.  Here, the jury did determine what happened.  The trial court was (and this Court on review is) charged with reviewing the evidence that supported the jury's general verdict of guilty to determine whether, as a matter of law, the evidence was sufficient to support a conviction for abduction, separate and apart from the sex crimes.  As appellant acknowledges we did in Smith v. Commonwealth, 56 Va. App. 711, 714, 697 S.E.2d 14, 15 (2010), we conduct this review under the familiar maxim that "we review the evidence in the light most favorable to the Commonwealth" as the prevailing party below.  (Internal quotation marks and citations omitted).  Furthermore, it should be recognized that our decisions in Hoyt, Wiggins, Smith, and the Supreme Court's decision in Lawlor all were rendered after Apprendi, and thus, are presumed to be consistent with its reasoning.  Finally, we note the United States Supreme Court denied *certiorari* when Lawlor sought review of the Virginia Supreme Court's decision in that case.  Lawlor v. Virginia, 134 S. Ct. 427 (2013).

[5] We note that then Judge Kelsey's concurrence in Wiggins, while critical of Hoyt, concluded, as we do, that the rule of Hoyt is binding on subsequent panels of this Court.  Wiggins, 47 Va. App. at 193, 622 S.E.2d at 784 (Kelsey, J., concurring in judgment) ("I thus concur only in the result in this case, as I believe Hoyt *requires me to do*." (emphasis added)).

- 16 -

Even if the interpanel accord doctrine did not prevent us from revisiting Hoyt, appellant still would not be entitled to the jury instruction he sought. As noted above, in a subsequent case, the Supreme Court held that "whether the detention established by the evidence is the kind of restraint which is *an intrinsic element* of crimes such as rape, robbery, and assault is a question of law to be determined by the court," and therefore, "the [trial] court did not err in denying the instruction" dealing with incidental detention.[6] Lawlor, 285 Va. at 229, 738 S.E.2d at 871. Accordingly, the trial court did not err in refusing to give the appellant's proffered instruction.

### III. Lack of *Voir Dire* of Appellant Regarding His Election not to Testify

Appellant argues that the trial court erred in failing to conduct a *voir dire* of appellant to ascertain whether he had knowingly and intelligently waived his right to testify. The Commonwealth responds that the trial court was not obligated to engage in a colloquy with appellant regarding his right to testify and that to the extent that this issue presents a valid claim, it is one of ineffective assistance of counsel, which may not be raised on direct appeal. Because this assignment presents a constitutional question, it is a question of law that we review *de novo* on appeal. Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005).

A criminal defendant has a constitutional right to testify in his own behalf. Rock v. Arkansas, 483 U.S. 44, 49 (1987). The right is a personal one, and therefore, "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, *testify in his or her own behalf*, or take an appeal . . . ." Jones v. Barnes, 463 U.S. 745, 751 (1983) (emphasis added). With the right to testify well-established,

---

[6] When confronted at oral argument with Lawlor's holding in this regard, appellant responded that the Supreme Court "got it wrong, too." Even if we were to agree with appellant, "we are bound by decisions of the Supreme Court of Virginia and are without authority to overrule" them. Roane v. Roane, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991).

the question becomes whether or not a valid waiver of that right can occur absent a trial court conducting a colloquy to directly inquire of the defendant whether he wishes to waive his right to testify.

Although a minority of courts faced with this question have required such a colloquy under provisions of either the federal or state constitutions,[7] the majority of courts have concluded that a trial court is not required to conduct a colloquy with a defendant to determine whether he has knowingly and intelligently waived his right to testify in his own behalf.[8] Because nothing in the text of the Constitution even suggests that such a colloquy is necessary and requiring the colloquy has the potential to do at least as much harm as good, we decline to impose such a requirement here. We find ourselves largely in agreement with the reasoning of the Supreme Court of Wisconsin, which, in rejecting a similar argument, held: "We decline to recommend that a trial judge, *sua sponte*, advise a defendant of the right to testify. Such admonition is subject to abuse in interpretation and may provoke substantial judicial participation that could frustrate a thoughtfully considered decision by the defendant and counsel

---

[7] See, e.g., Tachibana v. State, 900 P.2d 1293, 1303 (Haw. 1995); Sanchez v. State, 841 P.2d 85, 89 (Wyo. 1992); LaVigne v. State, 812 P.2d 217, 222 (Alaska 1991); State v. Neuman, 371 S.E.2d 77, 82 (W. Va. 1988); People v. Curtis, 681 P.2d 504, 514-15 (Colo. 1984); Culberson v. State, 412 So. 2d 1184, 1186-87 (Miss. 1982).

[8] See, e.g., Brown v. Artuz, 124 F.3d 73, 96 (2d Cir. N.Y. 1997); Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991); United States v. McMeans, 927 F.2d 162, 163 (4th Cir. 1991); United States v. Martinez, 883 F.2d 750, 757 (9th Cir. 1989), vacated on other grounds, 928 F.2d 1470 (9th Cir.), cert. denied, 501 U.S. 1249 (1991); Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987); State v. Walen, 563 N.W.2d 742, 751-52 (Minn. 1997); State v. Thomas, 910 P.2d 475, 478 (Wash. 1996); State v. Oliver, 656 N.E.2d 348, 351, cert. denied, 651 N.E.2d 1308 (Ohio 1995); State v. Brooks, 833 P.2d 362, 365 (Utah Ct. App. 1992); State v. Hamm, 818 P.2d 830, 833 (Mont. 1991); State v. Savage, 577 A.2d 455, 473 (N.J. 1990); Aragon v. State, 760 P.2d 1174, 1179 (Idaho 1988); Torres-Arboledo v. State, 524 So.2d 403, 410-11 (Fla. 1988); Commonwealth v. Hennessey, 502 N.E.2d 943, 946, review denied, 504 N.E.2d 1066 (Mass. 1987); People v. Simmons, 364 N.W.2d 783, 785 (Mich. 1985); State v. Allie, 710 P.2d 430, 438 (Ariz. 1985).

who are designing trial strategy." State v. Albright, 291 N.W.2d 487, 493 (Wis.), cert. denied, 449 U.S. 957 (1980).

Furthermore, based on the record before us, it is clear that appellant was fully aware of his right to testify and *elected* not to exercise that right. On two separate occasions, the trial court discussed, in appellant's presence, whether appellant would be exercising his right to testify. The first occasion was during the hearing on appellant's motion for a continuance, where, without the Commonwealth present, the trial court was informed that appellant and counsel had made the decision that appellant would not testify. The trial court raised the issue again during trial, prior to the initiation of the defense's case-in-chief. At that time, the trial court even took a recess to allow appellant to discuss the issue with counsel. On both occasions, appellant gave no indication that he wished to testify or that he disagreed with counsel's responses to the trial court's questions.

In fact, even when raising the issue post-trial, appellant has not contended that he was coerced or otherwise forced not to testify; rather, he complains that his counsel advised him not to testify and, despite his disagreement, he followed that advice. Thus, at most, appellant has raised a claim of ineffective assistance of counsel. Claims of ineffective assistance are not cognizable on direct appeal, and therefore, we cannot address appellant's claim in this regard. Dowdy v. Commonwealth, 278 Va. 577, 591, 686 S.E.2d 710, 718 (2009).[9]

IV.  Refusal to Strike Juror for Cause

Appellant argues the trial court erred in refusing to strike for cause the sociology professor who is affiliated with Women and Gender Studies at the University of Virginia. Specifically, he asserts that, because of her twenty-year teaching career, which involved "supervision of students

---

[9] Code § 19.2-317.1, which allowed direct appeal of such claims under certain circumstances, was repealed in 1990. See 1990 Va. Acts, c. 74; Browning v. Commonwealth, 19 Va. App. 295, 297, 452 S.E.2d 360, 362 (1994).

conducting research on sexual assault," she should have been stricken from the jury.[10]

According to appellant, her professional background necessarily "led her to a bias against" appellant.[11]

> When reviewing the determination of whether to exclude a prospective juror, this Court will

> > give deference to the trial court's determination whether to exclude a prospective juror, because the trial court was able to see and hear each member of the venire respond to the questions posed. Thus, the trial court is in a superior position to determine whether a juror's responses during *voir dire* indicate that the juror would be prevented or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath.

---

[10] Appellant characterizes the students' research as being "from a clearly female perspective." The juror never testified that this was the case; however, for purposes of resolving this issue, we will accept appellant's characterization as accurate.

[11] On appeal, appellant argues for the first time that the court erred because it failed to consider that seating the juror would weaken "public confidence" in the outcome of the trial. We will not consider for the first time on appeal appellant's contention of error not raised in the trial court. Rule 5A:18. Appellant argues that we previously have ruled that an appellant may raise the "public confidence" argument on appeal even if he did not specifically make that argument in the trial court. See Patterson v. Commonwealth, 39 Va. App. 658, 666, 576 S.E.2d 222, 226 (2003). However, the Supreme Court subsequently rejected this view, holding:

> Public confidence in the integrity of the judicial system, as a ground for excluding a juror for cause, must be raised in the trial court or that issue is waived. . . . Any "implication" arising from . . . prior decision[s] that the question of public confidence may be raised in any appeal when a motion to strike a juror for cause has been denied, regardless of whether it was properly raised below is expressly rejected. The trial court must be apprised of the basis upon which a public confidence objection to a juror is made and the other litigants given an opportunity to address the trial court on that matter.

Townsend v. Commonwealth, 270 Va. 325, 333, 619 S.E.2d 71, 76 (2005) (internal citations omitted); see also Mayfield v. Commonwealth, 59 Va. App. 839, 846, 722 S.E.2d 689, 693 (2012). Accordingly, our statement in Patterson, that Rule 5A:18 does not preclude a party from raising a "public confidence" challenge to a trial court's refusal to strike a juror for cause for the first time on appeal, is not a correct statement of the law, and therefore, we will not consider appellant's "public confidence" argument.

Thomas v. Commonwealth, 279 Va. 131, 164, 688 S.E.2d 220, 238 (2010). "A trial court's decision on this issue will be affirmed absent a showing of manifest error." Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176 (1999).

Here, the record reflects that the prospective juror did not know either of the parties. There is no indication that she was familiar with the allegations outside of her role as a prospective juror. She consistently maintained, without hesitation or equivocation, that she could and would decide the case solely on the evidence and the instructions of the trial court. No one attempted to "rehabilitate" her as a potential juror because she never gave any answer other than she would be able to fulfill her oath as a juror. The trial court specifically found her to be credible in her responses during *voir dire*. Nothing in the record indicates that the trial court abused its discretion or otherwise committed manifest error in refusing to strike the juror for cause.

Appellant argues that, despite the answers in *voir dire* and the trial court's credibility finding, the prospective juror's work history rendered it impossible for her to sit indifferent in the cause. Although disclaiming that he is seeking such a rule, appellant essentially asks us to find that a person affiliated with women and gender studies in a university setting can never fairly sit as a juror in a sexual assault case in which the defendant is a male. Nothing in Virginia law supports such a *per se* disqualification rule, and we decline to adopt such a rule here.

Accordingly, the trial court did not err in refusing to strike the prospective juror for cause.

V. Trial Court's Response to the Jury's Questions

Appellant argues that the trial court incorrectly answered the jury's questions when it instructed the jury that "[i]mposing concurrent sentences is not within the province of the jury." This position is inconsistent with appellant's position at trial, when not only did appellant fail to object to the trial court's answer, but he affirmatively agreed with it. As a result, the issue is not properly before us on appeal.

- 21 -

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Rule 5A:18. Thus, appellant's failure to object in the trial court bars our consideration of this issue on appeal.[12]

Of course, appellant not only failed to raise an objection to the trial court's answer, he affirmatively agreed with it. A party may not take inconsistent positions on the same issue in the course of litigation. As the Supreme Court repeatedly has held,

> [a] litigant is not allowed to approbate and reprobate. This Court has stated that a party may not in the course of the same litigation occupy inconsistent positions. . . . The prohibition against approbation and reprobation forces a litigant to elect a particular position, and confines a litigant to the position that she first adopted.

Matthews v. Matthews, 277 Va. 522, 528, 675 S.E.2d 157, 160 (2009) (internal quotation marks and citations omitted). Because appellant's appeal regarding the trial court's answer to the jury's questions is premised on a position that is wholly inconsistent with the position he took on the issue in the trial court, the approbate/reprobate doctrine bars our consideration of this argument.

CONCLUSION

For the foregoing reasons, we find that the trial court did not err in denying appellant's motion to strike the evidence of abduction with the intent to defile, in refusing to give a proposed

---

[12] Appellant argues this issue falls within Rule 5A:18's "ends of justice" exception. The exception applies when an appellant can demonstrate "(1) that the trial court erred, and (2) that a grave or manifest injustice will occur or the appellant will be denied essential rights." Brittle v. Commonwealth, 54 Va. App. 505, 513, 680 S.E.2d 335, 339 (2009). It is inapplicable here for several reasons. First, we also have found that appellant's argument is barred by the approbate/reprobate doctrine. Next, we believe that the trial court's answer was appropriate because "[a]s a general rule, in determining a defendant's sentence, a jury is not permitted to consider what may happen to a defendant after the jury reaches its verdict." Booker v. Commonwealth, 276 Va. 37, 41, 661 S.E.2d 461, 463 (2008). Finally, we note that, assuming that the jury had been allowed to comment on whether the sentences should run concurrently, the recommendation most beneficial to the appellant that the jury could have made would have been that the sentences should be run concurrently. This is exactly what the trial court did despite the lack of a recommendation from the jury. Accordingly, appellant has shown neither error nor a manifest injustice.

jury instruction on the law of incidental detention, in not conducting *voir dire* on whether appellant voluntarily waived his right to testify, in refusing to strike a juror for cause, or in its response to two jury questions.  Therefore, the judgment of the trial court is affirmed.

<u>Affirmed.</u>