COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Callins and White
Argued at Salem, Virginia

**PUBLISHED**

MARQUAY CHRISTOPHER ALSTON, S/K/A
 MARQUAY CHRISTOPHER LEE ALSTON

                                                                OPINION BY
v.        Record No. 0545-22-3              JUDGE DOMINIQUE A. CALLINS
                                                                MAY 23, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
Josiah T. Showalter, Jr., Judge

Robert L. Canard (Robert L. Canard, PLLC, on brief), for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following two separate bench trials, the Circuit Court of the City of Radford convicted

appellant Marquay Christopher Lee Alston of aggravated malicious wounding in violation of Code

§ 18.2-51.2, discharging a firearm from a vehicle in violation of Code § 18.2-286.1, and reckless

handling of a firearm in violation of Code § 18.2-56.1.  Alston asserts that the trial court erred in

finding the evidence sufficient to prove aggravated malicious wounding because he did not act with

malice and because the victim did not suffer a permanent and significant injury.  He also argues that

the trial court erred in convicting him of discharging a firearm from a vehicle in violation of Code

§ 18.2-286.1 because his actions did not cause another person to reasonably fear injury or death.

We disagree and affirm the judgment of the trial court.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below."  *Vay v.*

*Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

Alston first stood trial in the Circuit Court of the City of Radford for aggravated malicious wounding. On November 10, 2019, the then seventeen-year-old victim ("J.C.")[1] attended a party in Radford, Virginia. Alston also attended the party; J.C. and Alston did not know each other before the party. A fight broke out between several women at the party, including Alston's girlfriend, A.S. During the fight, A.S. punched another woman and pulled her to the ground. A.S. continued to punch the woman while she was on the floor. As A.S. punched her, J.C. tried to pull A.S.'s arms away from the woman and deescalate the situation by putting A.S. in a "half bear hug." Alston immediately approached J.C. and punched him in the face. Alston struck J.C. again so that J.C. fell on the floor. J.C. got up, and Alston followed him through the apartment, caught up to him, and continued to punch him. J.C. again was able to get away, but Alston followed J.C. outside and continued to hit him. A bystander video shows Alston punching J.C. repeatedly inside the apartment and after J.C. stepped outside to the apartment's breezeway.[2] Alston's blows knocked out one of J.C.'s teeth, and five other teeth were "mangled" so that they had to be pulled the next morning. J.C. was in the hospital overnight. Two years after the assault, six of J.C.'s front teeth were still missing because he could not afford to replace them. J.C. testified at trial that he has

---

[1] We use initials, instead of the then minor assault victim's name, to protect his privacy. *See Poole v. Commonwealth*, 73 Va. App. 357, 360 n.1 (2021).

[2] The bystander video also shows that after J.C. let go of A.S., she immediately returned to hitting the other woman.

difficulty eating certain foods and that he "really do[esn't] want to smile" because of his missing teeth.

Radford City Police Officer Robert Stultz interviewed Alston on the night of the fight. Alston admitted that he had punched J.C. in the face three or four times and commented that he thought the knuckles on his right hand may be broken. Officer Stultz also interviewed J.C. at the hospital and saw that J.C.'s "upper and lower lip were extremely swollen" and that J.C. "had obvious teeth that had been dislodged from his gums." Because of his injuries, J.C. had to use a notepad to communicate with the officer.

Alston testified that, a month and a half before the party, A.S. told him that she was pregnant. He went to the party with her because he did not want her to go alone. When Alston saw her and other women fighting, he did not get involved because "[i]t was just – it was females fighting." When J.C. grabbed her, however, Alston "just acted in [A.S.'s] defense" and punched J.C. multiple times. On cross-examination, Alston admitted that A.S. was unhurt during the incident and that she had punched another woman in the face, continued to hit that woman while she was on the ground, and slapped a different woman. Alston also conceded that J.C. did not punch or kick A.S. during the incident and was only attempting to "put like a half bear hug" on her. Alston further admitted that he followed J.C. outside after the initial attack and punched him two more times. When asked if those two final blows were "necessary," Alston replied, "No, sir."

During closing argument, the prosecution argued that J.C.'s injuries were a significant, permanent injury because, even if J.C. had his teeth replaced, false teeth would have to be "drilled and stuck" into his skull. The Commonwealth also argued that there was no evidence J.C. posed a threat to Alston or A.S. and noted that Alston punched J.C. a total of four times, with the last punch coming nearly a minute after the first. Alston responded that J.C.'s injuries were not permanent because fake teeth could have been implanted if J.C. had the resources for the surgery. Alston

further argued that he acted in the heat of passion, that he did not intend to knock J.C.'s teeth out, and that he simply thought he had given J.C. a "busted lip."

The trial court found that "no reasonable person would have done [what Alston had] done" and determined that Alston acted with the requisite malicious intent. The trial court also found that J.C. suffered a significant, permanent injury and thus convicted Alston of aggravated malicious wounding.

Alston next stood trial for discharging a firearm in violation of Code § 18.2-286.1; the charge stemmed from Alston's conduct after he left the party. At trial, Joshua Turman testified that he was at the party when the fights broke out and heard gunfire shortly thereafter. Turman testified that he ran toward the bathroom because he did not know "where the shots were landing." Turman and his friend Nathan then attempted to leave. As they drove away, Alston and two of his friends jumped in the backseat. Turman did not testify that he was friends with Alston or his two friends, but stated that, at the time of the party, he knew "of [Alston]." Nathan drove to a convenience store to purchase alcohol, and Alston pressured Turman to buy cigarettes. Nathan then started to drive to another party. Turman knew that Alston had a gun because he had "shot it off" at the first party. During the drive, Turman saw Alston shoot the firearm out the window. When the car drew near "the old industrial park" next to a bridge, Alston fired two shots "toward the mountain near the dam," which was an unoccupied area. The gunshots were not fired near traffic, but they were loud, and Turman testified that he was scared for his "safety and . . . well-being." Throughout the drive, Alston and his friend fired the gun over ten times. Turman did not say anything to Alston about the gunfire because he was "scared shitless." Turman testified that he was so scared that he asked Nathan to drop him off at a Days Inn near his house. Turman walked home from there.

The trial court found that Alston fired a gun out of the window of the motor vehicle in such a manner that Turman "was extremely scared and terrified to the point where he asked to be

dropped off at the Days Inn" so he could walk home. Thus, the trial court convicted Alston of discharging a weapon from a moving vehicle in violation of Code § 18.2-286.1.

ANALYSIS

On appeal, Alston challenges the sufficiency of the evidence to prove aggravated malicious wounding in violation of Code § 18.2-51.2 and discharging a firearm from a vehicle in violation of Code § 18.2-286.1. A sufficiency argument challenges the trial court's factual determinations and will only succeed if the trial court's judgment was plainly wrong or unsupported by the evidence. *See Vay*, 67 Va. App. at 249. When an appellant challenges the sufficiency of the evidence, "[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). Instead, "the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

I. Aggravated Malicious Wounding

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

Code § 18.2-51.2(A). Alston argues that when he punched J.C. at the party, he acted in the heat of passion, and therefore the evidence failed to prove he acted with malice. He also alleges that J.C.'s injuries were not a "permanent and significant physical impairment."

- 5 -

### a. Malice

"Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). It exists when a person commits "any purposeful and cruel act without any or without great provocation." *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). Malice "may be directly evidenced by words[] or inferred from acts and conduct which necessarily result in injury." *Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)). Circumstantial evidence is sufficient to prove malice. *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019).

"Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 643 (1997)). A person who acts under the heat of passion is "deaf to the voice of reason" and acts "on impulse without conscious reflection." *Dandridge*, 72 Va. App. at 681 (first quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016); and then quoting *Witherow v. Commonwealth*, 65 Va. App. 557, 567 (2015)). To establish that he acted under the heat of passion, a defendant must prove that he acted after a reasonable provocation. *Caudill v. Commonwealth*, 27 Va. App. 81, 85 (1998).

Alston argues that the trial court erred by finding he acted with malice because Alston acted upon a reasonable provocation. We disagree and hold that the evidence was sufficient to support the trial court's finding. After Alston's girlfriend pulled a woman to the ground and punched her repeatedly, J.C. tried to pull A.S. away. The evidence showed that he was attempting to restrain her arms so that she could not continue to hit the other woman. Although Alston concedes that J.C. did not harm his girlfriend, he still felt compelled to "act[] in [A.S.'s]

defense" by punching J.C. with enough force to knock out J.C.'s teeth. J.C. tried to walk away after the first punch, but Alston followed J.C. and continued to hit him throughout the apartment and on the breezeway. Alston punched J.C. so hard that Alston worried he broke the knuckles on his hand. J.C. lost six teeth because of the assault, and his injuries were so severe that he could only communicate with Officer Stultz that night by using a notepad to write down his responses.

Upon those facts, the trial court found that "no reasonable person would have done what [Alston did]." We defer to that finding unless it is plainly wrong. *See Vay*, 67 Va. App. at 249. The record does not show that J.C. attempted to provoke Alston by trying to break up the fight between the women. A.S. was hitting a woman on the ground, and J.C. attempted to protect the woman on the ground by restraining A.S.'s arms. There is no evidence that J.C. threatened A.S.'s safety. Alston's response was not proportional to J.C.'s conduct. Thus, the trial court was justified in finding that a reasonable person would not have viewed this as a provocation for an assault against J.C. Inherent in that finding, the trial court found that Alston did not act under the heat of passion. *See Caudill*, 27 Va. App. at 85 ("To establish the heat of passion defense, an accused must prove he committed the crime . . . upon 'reasonable provocation.'" (quoting *Canipe*, 25 Va. App. at 643)). Because Alston did not act upon a reasonable provocation, the trial court did not err in finding that Alston acted with malice. *See Fletcher*, 72 Va. App. at 507 (finding that malice exists when a person commits a "purposeful and cruel act without any or without great provocation" (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992))).

b. Significant and Permanent Injury

"To be convicted of aggravated malicious wounding under Code § 18.2-51.2, the injuries inflicted on the victim must be both a 'significant physical impairment' and 'permanent.'" *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010). "'[P]hysical impairment' for purposes of this criminal statute" is defined as "'any physical condition, anatomic loss, or cosmetic disfigurement.'"

*Id.* (quoting *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995)). "To prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it to the common sense of the [factfinder] to determine if the injuries are permanent." *Id.* at 644-45.

In this case, Alston's attack resulted in the loss of J.C.'s front teeth. He knocked out one tooth, and five more were so damaged that they had to be pulled. J.C. testified that it was hard to eat certain foods and stated that he was reluctant to smile because he was self-conscious about his missing teeth. It is immaterial that J.C. might be able to one day replace his teeth surgically with fake teeth. He forever lost six natural teeth, including his front teeth. This is a significant and permanent injury, and the trial court did not err.

## II. Shooting From a Vehicle in Violation of Code § 18.2-286.1

"Any person who, while in or on a motor vehicle, intentionally discharges a firearm so as to create the risk of injury or death to another person or thereby cause another person to have a reasonable apprehension of injury or death shall be guilty of a Class 5 felony." Code § 18.2-286.1. Whether a person's apprehension is reasonable is a factual determination that will not be disturbed on appeal unless plainly wrong or unsupported by the evidence. *See Clark v. Commonwealth*, 54 Va. App. 120, 130-34 (2009). In the motor vehicle context, a person may reasonably fear injury without specifically fearing an intentional assault from a shooter. *See Jones v. Commonwealth*, 296 Va. 412, 416 (2018) (finding that shooting at an occupied vehicle presents "a significant danger of grave harm or death to the occupants of the vehicle," because "[b]ullets can unpredictably ricochet off one of the vehicle's surfaces and strike an occupant").

Alston concedes that he intentionally discharged a firearm from the back seat of a motor vehicle, but he contends that the evidence was insufficient to show that his actions caused another to have a reasonable apprehension of injury or death. To make his argument, Alston relies on *Morris*

*v. Commonwealth*, 21 Va. App. 306 (1995). In *Morris*, the appellant was angry and held a rifle perpendicularly out of the driver's side of his vehicle, firing it into the woods. *Id.* at 310. The jury was instructed that the evidence must prove that the appellant's actions "create[ed] a risk of injury or death" to the victims. *Id.* at 309. The jury was never instructed that the appellant could be found guilty if he instead caused a reasonable apprehension of injury or death. *Id.* Thus, the law of the case doctrine barred the Commonwealth from arguing on appeal that the appellant's actions "cause[d] another person to have a reasonable apprehension of injury or death." *Id.* Because we did not consider whether the appellant caused a reasonable apprehension of injury or death—the very language of the statute at issue here—*Morris* is not applicable, and Alston's reliance is misplaced. The trial court explicitly found that Alston violated Code § 18.2-286.1 because he caused another to have a "reasonable apprehension of injury or death" when he shot the firearm.

The evidence shows that Turman attended a party where multiple fights broke out and at least one person fired a gun, namely, Alston. After Turman decided to leave, he and his friend Nathan started to drive away. At that point, Alston and two of Alston's friends jumped into the backseat of the car without Nathan's permission. There was no evidence that Nathan and Turman knew Alston personally before he got in the car; Turman specifically testified only that he "knew of" Alston before that night. During the drive, Alston and his friend fired the gun over ten times from the backseat of the car. Although Alston's gunshots were not fired near traffic, they were loud, and Turman testified that he feared for his "safety and . . . well-being." Indeed, Turman did not say anything to Alston about the gunfire because he was "scared shitless." Turman was so scared that he asked Nathan to drop him off at a Days Inn near his house so he could walk home.

Alston's actions in firing the gun under the circumstances presented here reasonably caused Turman to apprehend injury or death. Shooting a gun at a car is dangerous because "[b]ullets can unpredictably ricochet off one of the vehicle's surfaces and strike an occupant." *See Jones*, 296 Va.

at 416. Similarly, discharging a firearm from inside an occupied vehicle is dangerous and may reasonably cause the occupants of the vehicle to fear for their safety. Whether that fear is due to a fear of an accident, ricochet, or assault is not dispositive. Turman testified that his fear was based in his concern for his own safety, and a rational factfinder could find that Turman's fear was reasonable. Thus, the trial court did not err in finding that Alston violated Code § 18.2-286.1.

## CONCLUSION

For the foregoing reasons, Alston's convictions are affirmed.

*Affirmed.*