COURT OF APPEALS OF VIRGINIA

Present:    Judges Russell, Lorish and Senior Judge Annunziata
Argued by videoconference

**PUBLISHED**

RODNEY MASSIE

v.      Record No. 0282-21-4

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
FEBRUARY 8, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Susan L. Whitlock, Judge

Ryan J. Rakness (Rakness & Wright PLC, on brief), for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Mark R.
Herring,[1] Attorney General, on brief), for appellee.


Pertinent to this appeal, Rodney Massie was indicted by a grand jury of rape for feloniously causing another to engage in sexual intercourse with another person through the use of force, threat, or intimidation; forcible sodomy for feloniously causing another to engage in anal intercourse with another person through the use of force, threat, or intimidation; abduction with the intent to defile or for the purpose of prostitution in violation of Code § 18.2-48; and use of a firearm in the commission of each of the referenced felonies.[2]  On appeal, Massie asserts that the trial court erred in denying his motion to strike the charges, arguing that the evidence with respect to each charge was insufficient as a matter of law.  For the following reasons, we disagree with Massie and affirm the judgment of the trial court.

---

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] Massie also was indicted on two counts of larceny from the person.  At the conclusion of the Commonwealth's evidence at trial, the trial court struck one of those counts.  Ultimately, Massie was convicted of the second count of larceny from the person; that conviction is not before us in this appeal.

BACKGROUND

Because the Commonwealth was the prevailing party below, we "view the record in the light most favorable to the Commonwealth[,]" granting it any inferences that flow from that view. *Delp v. Commonwealth*, 72 Va. App. 227, 230 (2020). Accordingly, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that reasonably may be drawn from that evidence. *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

In 2017, C.W. was homeless and living in a tent in Culpeper County. She would earn money by occasionally detailing cars at a self-serve carwash. She also worked as a day laborer at various landscaping jobs when such jobs were available.

Near the end of May, Massie approached C.W. at the carwash and offered her some landscaping work. C.W. agreed, although she told Massie she was "sick," as she was experiencing withdrawals from her drug addiction. Massie responded that he would get her some Suboxone, which C.W. thought could help her. After C.W. collected her belongings from the tent, Massie gave her a ride to his house. On the way, Massie told C.W. he had some crack cocaine that they could smoke at his house.

When they arrived at Massie's home, C.W. met Massie's wife and his eleven-year-old daughter. C.W. also was introduced to Massie's pit bull named "Blue." Upon meeting Blue, Massie instructed C.W., "[d]o not walk around the house," because Blue "doesn't like people walking around the house." Later in the evening, Massie and C.W. smoked crack cocaine. C.W. then spent the night at Massie's house.

The next day, Massie woke C.W. and told her she needed to go to work. Massie, C.W., and "David" drove to northern Virginia where they mowed and weeded a large parcel of land. Although they labored for approximately eight hours, Massie did not pay C.W. for her work. On

the way back to Culpeper, they "went straight to the crack man's house" to procure drugs. Once back at Massie's house, they smoked the crack.

Massie, C.W., and David worked again the next day. Despite C.W. requesting payment for the work she performed, Massie did not pay her. Massie told C.W. that his "bitches don't have money." When returning from the job site, Massie again stopped at what C.W. had called the "crack man's house" to purchase drugs. After the purchase, Massie, C.W., and David returned to Massie's house where they smoked the crack.

The next day they were unable to find work. However, Massie received some cash from his uncle and he purchased more crack cocaine, which Massie and C.W. shared.

Later that day, C.W. received a phone call from an acquaintance who told her that a package had been left for her at a nearby gas station. Massie drove C.W. to the station to collect it. Inside the box, C.W. found a Bible, an envelope, a homemade bookmark containing a Bible verse, and gift cards for Kohl's, Dairy Queen, and Chick-fil-A. C.W. returned to Massie's vehicle, and when she showed him what she had received, Massie took the items from her, allowing her to keep only the Bible. Soon thereafter, Massie drove to a different location and gave the gift cards to another person. Massie did give C.W. twenty-five dollars to credit her cell phone account to enable her to receive calls. Upon returning to Massie's home, C.W. and Massie smoked crack cocaine.

The following day C.W. woke up too late to work on a landscaping project with Massie, so she walked to the carwash to clean and detail a car. She was paid forty dollars in cash, and from that, she spent approximately eleven dollars for cell phone service. She sent Massie a text message advising him of her location, and he arrived shortly thereafter. Massie was angry, jumped out of his vehicle and stated, "I told you, you ain't allowed to have money. My bitches don't have money." Massie then "snatche[d]" the remaining cash out of C.W.'s hands.

C.W. did not leave with Massie at that time, although he came back later in the evening to give her a ride back to his residence. While driving, Massie told C.W. that she needed to "take care of one of his friends."

Once back at the residence, Massie instructed C.W. to "go take a shower" and to "treat the gentleman nicely." C.W. took a shower, dressed, and encountered Massie and Blue in the hallway. Massie told C.W. that she "needed to go take care of . . . Boogie," a man she had never met. C.W. told Massie that she did not "do this type of stuff." Massie responded that she "had to" and that he, Massie, already had been paid. C.W. stopped at the office door and repeated "this is not what I do" and asked "why do I have to do it[?]" Massie told C.W. that Savannah[3] had "already made her money for the day" and displayed a revolver, which he "clicked . . . back" before telling C.W. to go into the office "or else."

C.W. testified she was "scared to death" because she "knew there was no way for [her] to get out of it[,]" so she entered the office. In addition to being afraid of the gun, C.W. was fearful of Blue because she had seen the dog "freak out" and behave aggressively when Massie commanded him to do so.

Once inside the office, Boogie pulled C.W. toward him, turned her around, and pulled down her pants and underwear. C.W. "felt his penis go into [her] anus." C.W. told Boogie to stop and he did. He then had vaginal intercourse with her that lasted three to five minutes, until Boogie realized C.W. was crying and he stopped. Boogie then put on his clothes, helped C.W. dress, and left the room. C.W. did not leave the office immediately because she would have had to pass by Massie and Blue.

---

[3] Earlier that week C.W. met Savannah, a woman who was about twenty-three years old. They met at the home of a man who lived near Massie. Savannah stayed at Massie's home over the next few days, presumably sleeping in what C.W. referred to as Massie's "office."

C.W. testified that she neither wanted to have, nor consented to having, anal or vaginal intercourse with Boogie and stated that she did not consent to having a third party pay Massie for the ability to have sex with her.

At the conclusion of all of the evidence, Massie moved to strike the charges, arguing the evidence was insufficient as a matter of law. The trial court overruled the motion to strike as to each charge.

The parties agreed on the jury instructions setting forth the elements of the predicate felonies. Consistent with the language of Code §18.2-61(A), the jury was instructed that, in order to convict Massie of rape, the Commonwealth had to prove that Massie "caused [C.W.] to engage in sexual intercourse with another person . . . against her will and without her consent . . . by [means of] force, threat or intimidation." Similarly, and consistent with the language of Code § 18.2-67.1(A)(2), the jury was instructed that, in order to convict Massie of forcible sodomy, the Commonwealth had to prove that Massie "caused [C.W.] to engage in anal intercourse with another person . . . against her will . . . by [means of] force, threat or intimidation."

Regarding the charge of abduction in violation of Code § 18.2-48, the jury was instructed as to the standard elements of abduction, *i.e.*, that, to support a conviction, the Commonwealth had to prove that Massie seized C.W. "by force or intimidation . . . with the intent to deprive [C.W.] of her personal liberty . . . without legal justification or excuse." In addition to the standard abduction elements, the jury also was instructed that, for a conviction pursuant to Code § 18.2-48, the Commonwealth was required to prove that Massie committed the seizure of C.W. "with the intent to sexually molest [her] or for the purpose of prostitution[.]"

The jury returned guilty verdicts on all charges, specifically finding Massie guilty of each offense "as charged in the indictment." The trial court entered judgment on the jury's verdicts

and subsequently sentenced Massie for each conviction.  Massie now appeals, asserting in his assignment of error that the trial court

> erred in denying the motion to strike as a matter of law finding that the evidence was sufficient to find the appellant guilty beyond a reasonable doubt of abduction with intent to defile, rape, sodomy and use of a firearm in the commission of those offenses.

ANALYSIS

I.  Standard of Review

In challenging the trial court's denial of his motion to strike, Massie necessarily asserts that the jury should not have been allowed to even consider the charges because "[a] motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)).  As a result, Massie's appeal raises the question of whether the evidence adduced sufficiently presented "a *prima facie* case for consideration by the" jury.  *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)).

Our consideration of that question involves determinations regarding both the elements of the offenses and whether there was sufficient evidence regarding each element so identified.  The identity of the necessary elements presents a question of law subject to *de novo* review.  *Lawlor*, 285 Va. at 223.  "Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong."  *Vay*, 67 Va. App. at 249 (quoting *Linnon*, 287 Va. at 98).  In determining whether sufficient evidence was adduced, "we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom."  *Lawlor*, 285 Va. at 224.

II. Convictions for rape and forcible sodomy

The elements of rape are set out in Code § 18.2-61(A). In pertinent part, that statute provides that a person is guilty of rape if he "causes a complaining witness . . . to engage in sexual intercourse with any other person and such act is accomplished . . . against the complaining witness's will, by force, threat or intimidation of or against the complaining witness[.]" Thus, for the charge to survive the motion to strike, the evidence had to be sufficient to allow a jury to conclude that Massie, by means of force, threat, or intimidation, caused C.W. to have sexual intercourse, against her will, with Boogie.

The elements of forcible sodomy are set out in Code § 18.2-67.1. In pertinent part, Code § 18.2-67.1(A)(2) provides that a person is guilty of forcible sodomy if he "causes a complaining witness . . . to engage in [anal intercourse] with any other person, and . . . [t]he act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness[.]" Thus, for the charge to survive the motion to strike, the evidence had to be sufficient to allow a jury to conclude that Massie, by means of force, threat, or intimidation, caused C.W. to have anal intercourse, against her will, with Boogie.

Massie advances several reasons in support of his assertion that the evidence was insufficient for the jury to be allowed to consider the rape and forcible sodomy charges. He argues that "it is undisputed that" Boogie and not Massie was the participant in the sexual acts, that the acts "occurred . . . outside of [his] presence[,]" and that he never expressly told C.W. to engage in sexual acts with Boogie and his statements to her are "too vague . . . to justify [the] rape and [forcible] sodomy" convictions.

Massie is correct that the evidence established that it was Boogie that performed the sexual acts and that Massie was not in the room when the acts occurred; however, these facts do not preclude the convictions. Although the defendant will have participated in the sexual act in

the lion's share of prosecutions for rape and forcible sodomy, the plain language of the statutes makes clear that does not have to be the case. Both statutes prohibit a person from causing a "complaining witness . . . to engage in" the prohibited sexual conduct "*with any other person*[.]" (Emphasis added). Thus, so long as the evidence was sufficient to establish that Massie caused C.W. to engage in the sexual acts with Boogie against her will through threat, force, or intimidation, it matters not that Massie did not engage in the sexual acts or that he was not in the room when the acts occurred.[4]

Massie's argument that he never expressly told C.W. to engage in sexual acts with Boogie fares no better. Although the evidence does not establish an express direction, the totality of the circumstances was more than sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that he, in fact, had directed her to do so under threat of bodily harm. The record reveals that, on multiple occasions, Massie referred to C.W. and others as his "bitches," which, as a slang term, can be used to refer to the prostitutes who work under a pimp. That Massie was using the term in this way may be inferred from his repeated statements to C.W. to the effect of "[m]y bitches don't have money" when he took money away from C.W. as controlling the flow of money provides a way for a pimp to exercise control over a prostitute.

The conclusion is further supported by the words that Massie spoke in the hallway immediately before C.W.'s encounter with Boogie. He instructed her to "treat the gentleman nicely" and to "take care" of Boogie. That this was not a request that she only engage Boogie in conversation is underscored by Massie's statement to C.W. that Boogie already had paid Massie

---

[4] Similarly, for the charges against Massie, it is largely immaterial whether Boogie was aware that C.W. was being coerced into the sexual acts by Massie. Assuming that a participant to a sexual act believed the encounter to be consensual does not negate the possibility that the complaining witness was coerced into the act by a third party. Thus, Boogie's purported lack of knowledge is pertinent to determining Boogie's *mens rea* if any charges were brought against Boogie; it does not shield Massie's actions from prosecution.

for the interaction and that Savannah already had earned money that day. Although in other contexts, "be nice" and "take care of" have other potential meanings, it is hard to discern such an alternative meaning here given Massie's statement about already receiving payment for the interaction and his reference to Savannah earning money.

C.W.'s responses and Massie's ultimate response further support a conclusion that he was directing her to engage in sexual activity. Her statements indicate her understanding that she was being directed to a sexual encounter that Massie had arranged and for which he had been paid. She repeatedly told Massie that she did not want to take care of Boogie and that "this is not what I do." Such statements seem far more likely to represent a desire not to engage in prostitution than a desire not to engage a stranger in nothing more than conversation. Massie, in response, told C.W. that she "had to" engage with Boogie and, when she expressed further reticence, drew a revolver, engaged its mechanism, and directed her to enter the room "or else." Such threatening behavior is consistent with an order to engage in prostitution, and a rational factfinder certainly could reject any argument that Massie threatened C.W. in this way to get her to engage Boogie in conversation or some other non-criminal activity.

These last actions by Massie not only contextualize *what* he was directing C.W. to do, it also provides sufficient evidence for a rational factfinder to conclude the *means* by which he caused her to do it. Even setting aside the presence of the pit bull who was known to be aggressive on Massie's command, Massie's display and cocking of the revolver in conjunction with his statement that she must comply "or else" is sufficient for a reasonable factfinder to conclude that he caused C.W. to engage in the conduct under the threat of bodily harm. The record confirms that this was C.W.'s understanding as she testified to being "scared to death[,]" afraid to the point that she remained in the room after the incident with Boogie because she feared she would encounter Massie and the pit bull if she attempted to leave.

Taken in their totality, the facts and circumstances present here provide a sufficient basis to allow a jury to conclude beyond a reasonable doubt that the elements of rape and forcible sodomy were established. *See Pick v. Commonwealth*, 72 Va. App. 651, 668 (2021) (recognizing that "the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion" (quoting *Finney v. Commonwealth*, 277 Va. 83, 89 (2009))). Accordingly, the trial court did not err in denying Massie's motion to strike the rape and forcible sodomy charges.

### III. Conviction for abduction pursuant to Code § 18.2-48

Massie also argues that the trial court erred in refusing to strike the charge for abduction in violation of Code § 18.2-48. Specifically, he contends that the evidence was insufficient to send the case to the jury because it was insufficient to establish that he "used the requisite force or intimidation necessary to prove abduction" or that "he abducted her with intent to defile."

The statutory offense of abduction is set out in Code § 18.2-47(A). Code § 18.2-47(C) provides that "[a]bduction for which no punishment is otherwise prescribed shall be punished as a Class 5 felony." Code § 18.2-48, which often is referred to as the abduction with the intent to defile statute, provides for enhanced penalties for abduction in certain defined circumstances. Those circumstances encompass abductions

> (i) of any person with the intent to extort money or pecuniary benefit, (ii) of any person with intent to defile such person, (iii) of any child under sixteen years of age for the purpose of concubinage or prostitution, (iv) of any person for the purpose of prostitution, or (v) of any minor for the purpose of manufacturing child pornography[.]

For the charge to survive Massie's motion to strike, the evidence first had to create a jury question regarding abduction. That is, the evidence had to be sufficient to allow a jury to conclude that Massie, without legal excuse or justification, seized, took, transported, detained, or secreted C.W. with the intent to deprive her of her personal liberty and that he accomplished this

- 10 -

by force, intimidation, or deception. *See* Code § 18.2-47(A). Additionally, to support the charge for abduction in violation of Code § 18.2-48, the evidence had to be sufficient to allow a jury to conclude that Massie abducted C.W. "with the intent to defile" her or "for the purpose of prostitution[.]" Code § 18.2-48(ii) and (iv).

Regarding the elements of abduction, the evidence was more than sufficient to allow the jury to consider the question. Viewed in the appropriate light, the evidence established that Massie controlled C.W.'s movements and restricted her liberty by means of intimidation. He ordered her to enter the room with Boogie, and, when she initially declined, overcame her will by pulling and cocking a revolver and telling her she would enter the room "or else." Even if one accepts that her travel to the house, taking a shower, and presence in the hallway were all voluntary, C.W.'s testimony, at a minimum, raised a jury question as to whether Massie forced her into the room against her will by means of force or intimidation. Accordingly, contrary to Massie's argument, the evidence was sufficient to support a conclusion that he "used the requisite force or intimidation necessary [for] abduction[,]" and therefore, the trial court did not err in denying the motion to strike for that reason.

Massie's second argument regarding the abduction charge is that the evidence was insufficient to raise a jury question on whether he had the intent to defile. In making this argument on appeal, Massie ignores that the statute, the indictment, and the jury instructions all allowed for conviction in the absence of an intent to defile.

As noted above, although often referred to as the abduction with the intent to defile statute, Code § 18.2-48 provides enhanced penalties for abductions in multiple circumstances. In addition to abductions carried out with the intent to defile, Code § 18.2-48(ii), the statute applies to other situations, including abductions "for the purpose of prostitution[.]" Code § 18.2-48(iv).

In this case, Massie was charged in the disjunctive; specifically, that he violated Code § 18.2-48 by abducting C.W. "with the intent to defile *or* for the purpose of prostitution[.]" (Emphasis added). Consistent with the indictment, in instructions agreed to by Massie, the jury was instructed that it should find Massie guilty on the charge if it concluded that he abducted C.W. "with the intent to sexually molest [her] *or* for the purpose of prostitution[.]" (Emphasis added).

The fact that the statute, indictment, and the agreed jury instruction use the disjunctive "or" is significant. Consistent with rules of English usage and grammar, we have "previously explained that phrases separated by a disjunctive are independent alternative choices." *Berry v. Barnes*, 72 Va. App. 281, 292 (2020), *aff'd*, 300 Va. 188 (2021). As a result, "the use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices." *Lewis v. Commonwealth*, 267 Va. 302, 314-15 (2004) (quoting *Hedrick v. Commonwealth*, 257 Va. 328, 340 (1999)). Accordingly, Massie's motion to strike was properly denied regarding the abduction charge if the evidence was sufficient to support a conclusion that the abduction was undertaken with the intent to defile *or* for the purpose of prostitution.[5]

The evidence clearly was sufficient for the jury to consider and ultimately conclude that Massie abducted C.W. for the purpose of prostitution. If believed, C.W.'s testimony sufficiently establishes that Boogie had paid Massie to have the sexual encounter with C.W. and that Massie, placing a limitation on C.W.'s liberty, forced her into the room with Boogie for that purpose by means of force and intimidation. As such, the evidence was sufficient for the charge to go to the

---

[5] In making his motion to strike in the trial court, Massie recognized that the charge encompassed both a potential intent to defile and abduction for the purpose of prostitution. He argued that the entire charge should be stricken and never asked to limit the jury to one of the two theories or to strike one but not the other. Once his motion to strike the entirety of the charge was denied, Massie agreed to the disjunctive jury instruction.

jury, and therefore, the trial court did not err in denying the motion to strike the charge for abduction in violation of Code § 18.2-48.[6]

#### IV. Convictions for use of a firearm

In his final argument, Massie challenges the trial court's denial of his motion to strike the use of a firearm charges related to the rape, forcible sodomy, and abduction in violation of Code § 18.2-48 convictions. Citing no authority but apparently referencing the arguments advanced earlier in the brief related to the rape, forcible sodomy, and abduction charges, Massie argues that "[f]or these reasons, the firearm offenses attached to the abduction, rape and sodomy charges must fail by necessity. In addition, the firearm charges should be dismissed because the evidence at trial demonstrates that the firearm was not used in conjunction with any of those alleged crimes."[7]

Code § 18.2-53.1 criminalizes the use, attempted use, or display of a firearm in the commission of various felonies, including rape, forcible sodomy, and abduction.[8] The statutory language does not require that the firearm be discharged to support a conviction. *See Dezfuli v.*

---

[6] Because we conclude that there was sufficient evidence that the abduction was for the purpose of prostitution for the matter to be submitted to the jury, we need not address whether the evidence similarly established that Massie abducted C.W. with the intent to defile. Accordingly, we do not address that issue. *See Delp*, 72 Va. App. at 235 n.4 (recognizing that an appellate court strives to resolve cases on the best and narrowest ground available).

[7] The quoted language represents the argument section of Massie's brief regarding the firearms charges in its entirety. Rule 5A:20 permits us to decline to address arguments that are unsupported by authority. *See Jay v. Commonwealth*, 275 Va. 510, 518-20 (2008) (permitting an appellate court to consider an assertion for which the appellant does not present legal authority as waived if that failure is significant). Given the consequentialist nature of the argument, that he is not guilty of the firearms convictions for the reasons he argued he was not guilty of the underlying felonies, we find the omission insignificant in this case and will address his challenge on the merits.

[8] Code § 18.2-53.1 provides, in pertinent part, that "[it] shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . rape, forcible sodomy, . . . or abduction."

*Commonwealth*, 58 Va. App. 1, 9 (2011) (holding that the statute prohibits both "the actual use of a firearm, *or* the display of a firearm in a threatening manner" (internal quotation marks and citation omitted)). Thus, to submit the question to the jury, the evidence had to allow a reasonable factfinder to conclude that Massie used *or* displayed a firearm during his commission of an enumerated felony.

Given our conclusion that the trial court did not err in denying Massie's motion to strike the rape, forcible sodomy, and abduction charges, his argument that the firearms charges fail "by necessity" is clearly without merit. Massie's secondary argument, that the firearm was not used in rape, forcible sodomy, or abduction also is without merit. As detailed above, the elements of each of the underlying felonies required some proof that Massie overcame C.W.'s will and forced her to engage in the sexual acts or otherwise controlled her movements. If credited, C.W.'s testimony made clear that her stated desire not to enter the room or engage in sexual activities with Boogie was overcome only when Massie pulled his revolver, cocked it, and informed her she would enter the room and engage with Boogie "or else." Viewed in the appropriate light, the display and cocking of the firearm, coupled with Massie's verbal threat, were necessary components of the commission of the three predicate felonies. Accordingly, the trial court did not err in denying Massie's motion to strike the firearms charges.

CONCLUSION

For the stated reasons, the trial court did not err in denying Massie's motion to strike the charges of rape, forcible sodomy, abduction in violation of Code § 18.2-48, or use of a firearm in the commission of the three identified felonies. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

- 14 -