COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia


MARCUS ALLEN COOPER

v.        Record No. 1221-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
OCTOBER 29, 2024


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Blake A. Weiner (Blake Weiner Law, PLLC, on briefs), for
appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Marcus Allen Cooper (appellant) of rape and strangulation, in violation of

Code §§ 18.2-61 and 18.2-51.6.  On appeal, he challenges the court's denial of several motions and

various evidentiary rulings.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below."  *Vay v.*

*Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625,

629 (2009)).  In doing so, we "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all

fair inferences to be drawn therefrom."  *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498

(1980)).

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I.  The Offenses

Appellant and S.M.[1] were involved in a multi-year relationship that was marred by physical violence, including assaults, strangulations, and rape.  Fearing for her life and her children's safety, S.M. remained with appellant until 2021, when she left him and reported the abuse to law enforcement in both Buena Vista and Rockbridge County.  As a result, appellant was charged with rape and strangulation alleged to have occurred in Rockbridge County between November 1, 2018 and April 20, 2019, and subsequent offenses of rape and strangulation, alleged to have occurred in Buena Vista on January 6, 2021.

Appellant was tried first for the Buena Vista offenses on December 7, 2022.  During that trial, the court declared a mistrial and the Commonwealth nolle prossed the cases.[2]

On January 26, 2023, a jury heard evidence in the Rockbridge County cases.  S.M. testified that in April 2019, when she was "very pregnant," she and appellant were arguing.  S.M. was sitting on a bed when appellant "kicked [her] repeatedly" and "ripped [her] off the bed by [her] hair."  He hit S.M. in the face, "choked" her, and threatened that he would "have [her] children raped in front of [her] if [S.M.] didn't do what he said."  Appellant then raped S.M.

## II.  Pre-trial Motions

### A.  Joint Motion to Continue to Investigate Facebook Messages and Appellant's Motion to Reconsider

Approximately one week before trial in Rockbridge County, appellant and the Commonwealth jointly moved to continue the trial to investigate the authenticity of threatening Facebook messages purportedly sent by appellant.  In October 2022, S.M. gave the Commonwealth

---

[1] We use the victim's initials to protect her privacy.

[2] Although the Commonwealth represented that the parties agreed that the record from the Buena Vista trial would be made part of the record in the Rockbridge County trial, that was not done.  Accordingly, the record from that trial, including the transcripts, is not before us.

images of Facebook messages that she claimed were forwarded to her from an unknown person. The messages reflected appellant attempting to solicit others to murder S.M. to prevent her from testifying at trial. After appellant raised concerns about the authenticity of the messages, the parties discovered that the messages were fabricated and were likely generated from websites called "fakedetail.com/fake-facebook-chat-generator" and "fakeinfo.net/fake-facebook-chat-generator."

At a hearing on the motion, the Commonwealth represented that it was "trying to determine where those fake messenger statements originated from" and Investigator Ryan McCullough "was able to determine that the website that creates these fake messages may be able to provide the information." The Commonwealth further noted that there "could be credibility issues that would be very discoverable exculpatory [evidence] for the defense" if an investigation revealed that S.M. had created the fake messages. The defense argued that the evidence would be probative of S.M.'s motive to lie and relevant for "general impeachment of a complaining witness for . . . motive to fabricate."

The court denied the motion to continue, ruling that evidence that S.M. fabricated the Facebook messages would not be admissible at trial under Virginia Rules of Evidence 2:607 and 2:608 and that the evidence was "far afield" of the issues in the case.

Appellant moved for reconsideration, arguing that an investigation was necessary because there was "significant evidence . . . that [S.M.] may have created" the fake messages, and the evidence would be admissible to show that S.M. had a motive to fabricate. He disputed that the issue was collateral because it was connected to the "main fact": whether S.M.'s allegations were true or false.

The court denied the motion to reconsider. The court again reasoned that, even if an investigation revealed that S.M. was responsible for fabricating the messages, the evidence was

inadmissible, "disconnected to the events that led to [the] indictments," and "would tend to confuse or mislead the trier of fact."

### B.  Motion to Continue for Expert

On the morning of trial, appellant filed another motion to continue.  He sought to obtain a digital forensic expert "to identify the date and times that photographs" related to the Buena Vista attack were taken.  Appellant proffered that S.M. testified at the Buena Vista trial that she photographed her injuries, and those photographs were admitted into evidence.

Appellant argued that S.M. had lied about when the photographs were taken.  He asserted that the pictures' file names showed the date they were taken, and those dates were different from her testimony at the Buena Vista trial.  Appellant requested a continuance to obtain a digital forensic expert who could testify about the file names and show that S.M.'s testimony at the Buena Vista trial about the photographs was "materially false."  The court denied the motion.

### C.  Motion to Compel

Also on the morning of trial, appellant argued that a recording of a police investigator's interview with S.M. was "completely missing a large section of discussion."  He asked the court to compel the Commonwealth to provide the complete recording.

The Commonwealth responded that the recording was complete and that a police investigator was present to testify that the recording device had simply been turned on after S.M. was already talking.  The court denied the motion to compel, noting that appellant could question the investigator about the completeness of the recording.  Neither party called the investigator to testify at trial.

## III.  Evidentiary Rulings

### A.  Appellant's cross-examination about the fabricated Facebook messages

Appellant sought to cross-examine S.M. about the fabricated Facebook messages with the evidence that she forwarded the fabricated messages to law enforcement and that the file names indicated that they were created using websites that generate fake messenger chats.  Appellant argued that the evidence was probative of his theory that she fabricated the messages and did so to bolster her claim.  The court ruled that the cross-examination was designed to elicit impermissible character evidence, was collateral to the issues at trial, and would "confuse or mislead the trier of fact."

### B.  Appellant's cross-examination about photographs from the January 2021 Buena Vista attack

During cross-examination, appellant confronted S.M. with the photographs from the Buena Vista attack.  Appellant proffered that in a recorded interview with Investigator McCullough, S.M. told the investigator that the photographs were taken in February 2020, but testified at the Buena Vista trial that the photographs were taken on January 6, 2021.  Appellant sought to impeach her to show the inconsistency between her statements in the interview and her testimony at the Buena Vista trial.  The court rejected this line of questioning, cautioning appellant not to re-try the Buena Vista case and finding that the proffered impeachment did not "relate to her testimony on direct in this case."  The court also found that it would "distract this jury from the issues to be decided" in the case.

### C.  Appellant's cross-examination about forced methamphetamine use

During cross-examination, appellant asked S.M. if she had testified at the Buena Vista trial that appellant had not forced her to use methamphetamine.  S.M. responded that while appellant did not physically force her, she felt compelled because he might abuse her if she refused.  The Commonwealth objected, and the court cautioned appellant that S.M.'s testimony at the Buena

Vista trial was outside the scope of the Commonwealth's direct examination and that nothing he was asking related to or was inconsistent with her direct testimony in the present case. Appellant responded that S.M. testified that she delayed reporting the abuse because she was afraid of appellant, and this line of questioning related to her fear. The court permitted appellant to continue to question S.M. about forced drug use but denied appellant's request to play a clip of her testimony at the Buena Vista trial. The court stated that "the intricacies about her answer to a question about being forced to use drugs physically or otherwise are collateral to the issues the jury has to decide."

D. Appellant's cross-examination about damage to S.M.'s voice

The Commonwealth stated in its opening statement that S.M. suffered vocal damage because of appellant's strangulations but did not question S.M. about vocal damage during her direct examination. Appellant attempted to cross-examine S.M. on this issue, but the court held that it was beyond the scope of direct and that the Commonwealth's opening statement did not open the door because opening statements are not evidence. Appellant proffered that S.M. told investigators that she couldn't scream because of the damage to her vocal cords, but later told them that she woke up screaming from nightmares. The court found that while the statements might be inconsistent with each other, they were not inconsistent with S.M.'s testimony on direct and therefore not admissible.

E. S.M.'s volunteered statements

During cross-examination, appellant asked S.M. if "the reason why [she] never reported [the abuse] is because [she was] encountering these types of extreme abuse almost daily." S.M. responded, "Regularly. There would be maybe two or three days that I wouldn't have my hair ripped out I wouldn't be screamed at and threatened but that's normal with a domestic violence relationship." Appellant objected to her response and S.M. interjected, "That is a true statistic." Appellant moved to strike her testimony. The court overruled appellant's motion but cautioned

S.M. to "answer the questions [asked]." S.M. acknowledged she was not an expert on domestic violence relationships.

## F. S.M.'s journal

During the parties' relationship, S.M. kept a journal as a record of the abuse she suffered. Citing hearsay, appellant objected to any evidence about the journal being presented to the jury. The Commonwealth argued that appellant had "opened the door" to questions about the journal because he challenged her fear of appellant and her memory about when the abuse occurred. The Commonwealth asserted that the journal showed approximately when the abuse occurred and contemporaneously documented her fear.

Invoking Virginia Rule of Evidence 2:801(d)(2)(B), the court permitted a limited inquiry about two journal entries. The court only permitted the Commonwealth to ask why S.M. kept the journal and whether any entries about abuse were made during the indicted time frame.

S.M. testified that she started keeping a journal in 2018 "in case [she] died somebody would be able to find that . . . and say oh, she was going through something. She didn't just leave her kids behind. She didn't kill herself. This was done. Look into who this journal is about." The Commonwealth directed her attention to "two particular entries" dated November 30 and December 1, 2018. S.M. confirmed that she wrote in her journal on those dates and that the two entries discussed abuse. S.M. said nothing further about the journal; she did not testify about the contents of the entries, and the journal was not admitted into evidence or published to the jury. Appellant was permitted to re-cross S.M. about the dates of the two entries and ask her whether she wrote the journal after she reported the abuse.

G. Appellant's cross-examination about unconsciousness after the Buena Vista strangulation

During cross-examination, appellant asked S.M. how long she lost consciousness during "some of [the] strangulations." S.M. responded that she didn't know but agreed that she had told investigators it had "felt like hours" during the Buena Vista strangulation.

After appellant's expert, Dr. Paul Trinquero, testified that being unconscious for hours was inconsistent with science, the Commonwealth asked Dr. Trinquero on cross-examination whether someone who loses consciousness can lose track of time. Dr. Trinquero "agree[d] that people would not have an accurate representation . . . of the amount of time always."

After this testimony, appellant sought to call S.M. to the witness stand again "to demonstrate that she would have had to know that she was allegedly unconscious for multiple hours." The court refused, reasoning that appellant was attempting to impeach S.M.'s testimony about an offense for which he was not on trial.

H. Evidence about CPR after the January 2021 Buena Vista strangulation

Appellant sought to ask Dr. Trinquero about cardiopulmonary resuscitation (CPR), because S.M. had allegedly told investigators that appellant had revived her with CPR after he strangled her during the Buena Vista attack. Neither the Commonwealth nor appellant asked S.M. about CPR during her testimony. The court excluded Dr. Trinquero's testimony about CPR, and appellant merely proffered that if he had been permitted to ask S.M. about CPR, Dr. Trinquero "would testify regarding CPR."

IV. Closing Argument

During closing argument, defense counsel remarked that he heard "a quote that [he] thought was pretty brilliant . . . [:] '[A]n accusation such as the one made here today, once made . . . .'" The Commonwealth objected, arguing that the quote was "an old jury instruction that has been deemed to be inappropriate in cases of rape," and the court sustained the objection.

Defense counsel unsuccessfully attempted to rephrase, arguing that he would "just tell [the jury] a thought to take with [it][:] An individual could easily make [up] these allegations. . . . It's very easy to do. And once it's done[,] it's very difficult to defend against." The court again sustained the Commonwealth's objection and told the jury to disregard the statement. Appellant did not object to the court's rulings.

## V. Motion to Set Aside the Verdicts

Appellant moved to set aside the jury's guilty verdicts, arguing that trial errors and newly discovered evidence warranted a new trial. Appellant proffered an email he received two weeks after trial from the Buena Vista Commonwealth's Attorney. The email confirmed that S.M. sent "screen shots" of the fabricated Facebook messages to police investigators. The email stated that S.M.'s statements,

> would seem to be inconsistent with the file names assigned to the files as they appear on my copies. I am going to try to discuss this with a digital forensic expert with the state and make sure of my understanding and assumptions today or tomorrow. I will reach out to you as soon as that is done.

The record does not show that appellant and the Buena Vista Commonwealth's Attorney had any further communication on this issue. Appellant argued that the email was additional evidence that S.M. had fabricated the Facebook messages. The court denied the motion without a hearing.

## ANALYSIS[3]

Appellant asserts the court should have granted his pre-trial motions to continue and his motion to compel. He also assigns error to the court's evidentiary rulings. Finally, he argues the

---

[3] In addition to the assignments of error we address in this section, appellant also assigns error to the court's denial of his motion to set aside the verdicts for the errors he alleges the court committed during trial (assignment of error XVI(A)). Given that appellant's argument for this assignment of error merely incorporates all of his prior arguments, we do not address it separately.

- 9 -

court erred by sustaining the Commonwealth's objection during his closing argument and by denying his motion to set aside the verdicts.

### I. Motion to continue for expert (assignment of error II(B))

Appellant argues the court erred by denying his motion to continue the trial so he could obtain a digital forensic expert to testify about the photographs S.M. claimed were taken after the Buena Vista attack. Appellant asserts that an expert's testimony would have shown that S.M.'s testimony at the Buena Vista trial was "materially false."

Whether to grant or deny a motion for a continuance "is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007). A trial court's "ruling on a motion for continuance will be reversed 'only upon a showing of abuse of discretion and resulting prejudice to the movant.'" *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 723 (2008)).

Appellant filed this motion the morning of trial. "When a defendant makes a last minute request for a continuance, he must demonstrate that exceptional circumstances exist." *Reyes v. Commonwealth*, 68 Va. App. 379, 387 (2018), *aff'd*, 297 Va. 133 (2019). Appellant cannot do so. While appellant explains that he delayed in filing the motion because he did not receive the photographs "in their original digital form" until January 6, 2023—20 days before trial—he does not argue or explain why he delayed until the morning of trial to request leave to seek an expert to testify about the photographs. He could have done so within the 20 days leading up to the trial. Accordingly, the court did not abuse its discretion by denying appellant's motion to continue to obtain a digital forensic expert.

II.  Motion to compel (assignment of error II(C))

Appellant argues that the court erred by denying his motion to compel the Commonwealth to provide a "full" version of a recording of a police investigator's interview with S.M.  Appellant alleged that the recording was not complete because it was "missing a large section of discussion."  The Commonwealth disputed appellant's allegations and asserted that the recording device had been turned on while S.M. was already talking.  We review a trial court's denial of a motion to compel discovery for an abuse of discretion.  *See Hodges v. Commonwealth*, 26 Va. App. 43, 52 (1997).

Appellant failed to demonstrate that he had not been given a "full" version of the recording.  The court provided appellant with the opportunity to call the investigator who took the recording and he did not do so.  His allegation that a more complete version of the recording exists is unfounded and wholly speculative, especially in light of the Commonwealth's explanation why the recording may not have captured part of S.M.'s interview.  The court did not abuse its discretion by denying the motion to compel.

III.  Facebook messages (assignments of error I, II(A), III(B), and XVI(B))

Appellant argues that the court erred by not continuing the case to permit the parties an opportunity to investigate whether S.M. fabricated the Facebook messages showing appellant attempting to solicit murder.  He also argues that even if the court did not err by denying the motion to continue, he should have been permitted to cross-examine S.M. on this issue with the evidence he already possessed; mainly, evidence that she forwarded the fabricated messages to law enforcement and that the messages' file names indicated that they were created using websites that generate fake messenger chats.  Appellant asserts that the court erred by finding that the evidence was collateral

- 11 -

and inadmissible under Rule 2:608 because it was relevant to show bias or a motive to fabricate. He further argues that the court's ruling amounted to a violation of his constitutional rights.[4]

"Appellate courts review evidentiary rulings under an abuse of discretion standard." *Boone v. Commonwealth*, 63 Va. App. 383, 388 (2014). "Under this deferential standard, a 'trial judge's ruling will not be reversed simply because an appellate court disagrees;' only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Under Rule 2:608(b), "specific instances of the conduct of a witness may not be used to attack or support credibility" and "may not be proved by extrinsic evidence." Unless the evidence "is relevant to show" a witness's bias or motive to fabricate, *Banks v. Commonwealth*, 16 Va. App. 959, 963 (1993), "[a] witness cannot be impeached by evidence of a collateral fact which is not relevant to the issues of the trial, even though to some extent it has a bearing on the issue of credibility," *Maynard v. Commonwealth*, 11 Va. App. 437, 444 (1990) (en banc).

The court did not abuse its discretion in finding that the fabricated Facebook messages were collateral and inadmissible under Rule 2:608 and that appellant failed to sufficiently demonstrate that they were relevant to show S.M's bias or motive to fabricate. There was no direct evidence that S.M. was responsible for creating the messages, and she denied doing so. The court below correctly reasoned that the evidence was merely "speculative" that S.M. was responsible. Additionally, as the court found, the evidence was "tempora[lly] disconnected [from] the events that led to [the]

---

[4] Appellant did not argue to the trial court that his constitutional rights were violated by the court's decisions on any issue except the Facebook messages, and so, we only review whether appellant's constitutional rights were violated for this assignment of error. *See* Rule 5A:18; *Cortez-Hernandez v. Commonwealth*, 58 Va. App. 66, 79 (If the trial court was not "afforded the opportunity to correct any alleged constitutional error[,] . . . that specific objection is not properly preserved for appeal."), *adopted upon reh'g en banc*, 59 Va. App. 37 (2011).

indictments." Messages fabricated almost twenty months after the events giving rise to the indictment are minimally probative of any bias or motive to fabricate an earlier crime. Therefore, under an abuse of discretion standard of review, we cannot say that no reasonable jurist could differ as to whether the evidence sufficiently established bias or a motive to fabricate, and accordingly, the court did not abuse its discretion in refusing the evidence. *Campos*, 67 Va. App. at 702.

Furthermore, the court did not abuse its discretion in finding that the risk of confusing the jury substantially outweighed the evidence's probative value into S.M.'s bias or motive to fabricate. A litigant may not employ "the right to cross-examine a witness to show bias or motivation to falsify" as "a device to confuse the issues before the jury." *Lewis v. Commonwealth*, 269 Va. 209, 214 (2005). A court may exercise its discretion and exclude relevant evidence if its probative value is "substantially outweighed" by "its likelihood of confusing or misleading the trier of fact." Va. R. Evid. 2:403(a)(ii).

Here, "the danger that the evidence would confuse the jury was high," and the evidence was minimally probative of any bias or motive to fabricate. *Lambert v. Commonwealth*, 70 Va. App. 740, 755 (2019). Appellant would have had to first establish that S.M. created the messages before the evidence could have been probative of any bias and motive to fabricate. Permitting a "mini-trial" about whether S.M. had fabricated the incriminating Facebook messages would have distracted the jury from determining appellant's guilt or innocence in the case before it. Because the court did not err in finding that the evidence was inadmissible, it did not err by denying the motion to continue and the motion to set aside the verdicts.

In the alternative, appellant argues that the exclusion of the evidence violated his due process and confrontation rights because he did not have a meaningful opportunity to present a complete defense.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Sheng Jie Jin v. Commonwealth*, 67 Va. App. 294, 308-09 (2017). "It does not follow," however, that the Constitution "prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Sheng Jie Jin*, 67 Va. App. at 308 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 308-09 (quoting *Van Arsdall*, 475 U.S. at 679). As discussed, the evidence here was "simply too attenuated" to amount to a constitutional violation, and the court's concerns about "confusion of the issues" was well founded. *Id.* at 308, 310. Thus, we find that appellant's constitutional rights were not violated by the exclusion of this evidence.

IV. Appellant's cross-examination about photographs S.M. claimed to have taken after the Buena Vista attack (assignment of error III(A))

Appellant argues that the court erred by not permitting him to introduce S.M.'s "inconsistent testimony given . . . in Buena Vista." At the Buena Vista trial, S.M. claimed she took photographs of her injuries after the 2021 attack charged in that case, however, appellant claimed that S.M. previously told police investigators that she took the photographs in February 2020. At trial, the court denied appellant's attempt to impeach S.M's testimony at the Buena Vista trial. The court did not err by finding that this line of questioning was well beyond the

- 14 -

scope of S.M.'s direct examination and would "distract this jury from the issues to be decided" in the case.

Generally, the cross-examination of a witness is limited to matters elicited on direct examination. *Smith v. Irving*, 268 Va. 496, 501 (2004). "[I]f counsel's attempted cross-examination of a witness addresses matters exceeding the scope of direct examination, a court's refusal to allow this cross-examination will be approved on appeal as a proper exercise of the court's discretion." *Id.* "A witness cannot be impeached by evidence of a collateral fact which is not relevant to the issues of the trial, even though to some extent it has a bearing on the issue of credibility." *Maynard*, 11 Va. App. at 444.

Appellant's questions about whether S.M. had been truthful about the photographs at the Buena Vista trial were not within the scope of her direct examination and were collateral to the issues in the case. In her direct testimony, S.M. did not testify specifically about the Buena Vista attack or any injuries she received as a result.

Additionally, the court did not abuse its discretion in ruling that the probative value of the proffered evidence was substantially outweighed by its likelihood of confusing the trier of fact. Va. R. Evid. 2:403(a)(ii); *Turner v. Commonwealth*, 65 Va. App. 312, 329-30 (2015) ("The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse." (quoting *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990))). This line of questioning would have distracted the jury from determining appellant's guilt in this case, and instead would have put it in the position of determining his guilt for the Buena Vista attack.

V. Appellant's cross-examination about forced methamphetamine use (assignment of error III(C))

Appellant argues that the court erred by limiting his impeachment of S.M. regarding whether appellant had forced her to use methamphetamine. The court permitted appellant to ask S.M. about whether appellant had forced her to use drugs but refused to allow appellant to play a clip of her testimony in the Buena Vista trial.

"[E]xtrinsic evidence of collateral statements is not admissible." *Massey v. Commonwealth*, 67 Va. App. 108, 126 (2016) (quoting Va. R. Evid. 2:613(a)(ii)). "[W]hen 'the circumstances [of the other event] have no intimate connection with the main fact[,] if they constitute no link in the chain of evidence[,] . . . they ought to be excluded.'" *McGowan v. Commonwealth*, 274 Va. 689, 695 (2007) (second and fifth alterations in original) (quoting *Guill v. Commonwealth*, 255 Va. 134, 139 (1998)).

The Commonwealth correctly argues that "[w]hether [appellant] forced S.M. to use drugs after a later incident in Buena Vista constitutes no link in the chain of evidence of whether he raped and strangled her in Rockbridge in April 2019." The court afforded appellant wide latitude to question S.M. about whether she had testified inconsistently at the Buena Vista trial about forced drug use, and only limited appellant when he sought to introduce inadmissible extrinsic evidence. The court did not abuse its discretion in imposing this reasonable limitation on appellant's cross-examination.

VI. S.M.'s vocal damage, volunteered statements, journal, and consciousness after the Buena Vista attack (assignments of error III(E), V, VI, VII, and XI)[5]

"In analyzing the decision of a lower court," this Court "looks for 'the best and narrowest grounds available' for its decision, including harmless error." *Commonwealth v. Kilpatrick*, 301

---

[5] Although appellant also argues that these issues violated his constitutional rights, we apply a non-constitutional harmless error review because appellant did not argue constitutional error to the trial court, and accordingly did not preserve that argument for appeal. *See* Rule 5A:18.

Va. 214, 216 (2022) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Van Arsdall*, 475 U.S. at 681. Accordingly, an appellate court "may uphold a decision on the ground that any evidentiary error involved is harmless if it can conclude 'that the error did not influence the jury[] or had but slight effect.'" *Kilpatrick*, 301 Va. at 216 (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)); *see also* Code § 8.01-678 (providing that this Court may not reverse the trial court's judgment "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached"). When considering whether an error was harmless, "the court 'consider[s] the potential effect of the [admitted or] excluded evidence in light of all the evidence that was presented to the jury.'" *Kilpatrick*, 301 Va. at 217 (first alteration in original) (quoting *Haas v. Commonwealth*, 299 Va. 465, 467 (2021)).

### A. Vocal Damage

Appellant argues that the court erred by not permitting him to question S.M. about vocal damage she sustained from the strangulations after the Commonwealth referenced it in their opening statement. Even presuming error, the exclusion of this evidence was plainly harmless.

Appellant's proffer of the testimony he would have elicited on this issue—that S.M. claimed she could not scream "at all" from the vocal damage she suffered, but then told investigators that she woke up screaming from nightmares—shows that the impeachment evidence was minimally probative of her credibility. That testimony would have shown, at most, that she may have embellished the extent of her injuries to investigators. The introduction of these statements would not have changed the outcome and would have had "slight effect." *Kilpatrick*, 301 Va. at 216 (quoting *Clay*, 262 Va. at 260).

- 17 -

## B.  S.M.'s Volunteered Statements

Appellant argues that the court erred by failing to strike S.M.'s spontaneous testimony about what was "normal with a domestic violence relationship" and her volunteered comment that it was "a true statistic."  Appellant asserts that her comments impermissibly bolstered her testimony.

S.M.'s spontaneous comments constituted a minuscule portion of her overall testimony and would not have substantially influenced the jury.  Additionally, S.M. conceded that she was not an expert on domestic violence relationships.  The jury can reasonably have been expected to have given S.M.'s comments little weight when considering the breadth and scope of S.M.'s overall testimony, and the court's error in not striking these comments, if error, was immaterial.  *See Van Arsdall*, 475 U.S. at 681 (finding that a harmless error analysis "promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error").

## C.  S.M.'s Journal

Appellant asserts that the court erred by admitting any evidence about S.M.'s journal because it was inadmissible hearsay.  Appellant contends the court improperly limited his cross-examination of S.M. about the journal and that he should have been permitted to impeach S.M. with evidence of the fraudulent Facebook messages and the Buena Vista photographs to argue to the jury that her testimony about keeping a journal was false.

S.M. gave limited testimony about the journal.  S.M. was not questioned about the specific contents of the entries, they were not read into evidence, and the journal itself was never introduced.  The Commonwealth only inquired why S.M. kept a journal and the dates of two entries.  Further, the jury had already heard testimony about S.M.'s memory of past abuse.  *See Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016) (noting that an appellate court must "examin[e] the excluded evidence in light of the entire record").  Accordingly, any testimony

about the journal would have had "but slight effect" on the jury. *Kilpatrick*, 301 Va. at 216 (quoting *Clay*, 262 Va. at 260).

Appellant cross-examined S.M. about the dates of the two entries and even questioned her directly about whether she wrote the journal after she reported the abuse. Merely because the court did not permit appellant to use attenuated evidence like the Buena Vista photographs and the Facebook messages to "demonstrate a motive to falsify the journal dates" does not mean that appellant was deprived of an opportunity to impeach S.M.

Consequently, any error in permitting this limited testimony was harmless.

### D. Unconsciousness

Appellant argues that the court erred by limiting appellant's impeachment about S.M.'s statements to police investigators that she had been unconscious for what "felt like hours" after the Buena Vista strangulation. Appellant argues he should have been permitted to question S.M. again, after his expert stated that her statement was inconsistent with science.

The jury heard S.M. testify she told investigators that, after the 2021 Buena Vista attack, she felt like she had been unconscious for hours. The jury also heard appellant's expert state that being unconscious for hours was unlikely after a strangulation and such a claim was not supported by science. Thus, any error in the court's decision to not permit appellant to call S.M. again to question her, for a second time, about the length of her unconsciousness in a separate incident that was not the subject of the trial would not have changed the outcome. *See Schmuhl v. Commonwealth*, 69 Va. App. 281, 308 (2018) ("Error is harmless when we are able to conclude 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" (quoting *Clay*, 262 Va. at 260)).

## VII. Evidence about whether S.M. needed CPR after the Buena Vista attack and appellant's closing argument (assignments of error XII and XIII)

Appellant argues the court erred by "forbidding" his expert "from testifying about [S.M.'s] statements regarding CPR." When the court sustained the Commonwealth's objection to expert testimony about CPR, appellant merely proffered for the record that his expert "would testify regarding CPR." This proffer is insufficient.

Under Virginia Rule of Evidence 2:103(a)(2), "[e]rror may not be predicated upon admission or exclusion of evidence, unless[,] [a]s to evidence excluded, the substance of the evidence was made known to the court by proffer." *See also Massey*, 67 Va. App. at 132 ("The failure to proffer the expected testimony is fatal to [a] claim on appeal." (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 367-68 (2006))). "'[C]ounsel and the trial court must ensure [that such] proffers contain all of the information necessary' to achieve two purposes: to allow the trial court a fair opportunity 'to resolve the issue at trial' and 'to provide a sufficient record for . . . review [on appeal].'" *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015) (second, third, and fourth alterations in original) (quoting *Albert v. Albert*, 38 Va. App. 284, 290 n.1 (2002)).

Appellant failed to proffer any specifics. A mere statement that an expert would have testified about CPR generally does not provide this Court with a sufficient record for review on appeal. *Id.* Additionally, "[v]ague protestations against excluding the evidence [are] insufficient to assist the trial judge in making a rational determination of its admissibility." *Neal v. Commonwealth*, 15 Va. App. 416, 421 (1992) (quoting *Wright v. Hartford Accident & Indem. Co.*, 580 F.2d 809, 810 (5th Cir. 1978)).

Additionally, appellant argues that the court erred by sustaining the Commonwealth's objection during his closing argument and instructing the jury to disregard the quote, "[A]n accusation such as the one made here today, once made . . . ." This assignment of error is procedurally defaulted because appellant did not note an objection to the court's ruling.

Under Rule 5A:18, "for an alleged error to be considered on appeal, the appellant must 'alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.'" *Nelson v. Commonwealth*, 71 Va. App. 397, 406 (2020) (quoting *Neal*, 15 Va. App. at 422). Appellant did not object to the court's ruling and continued with his closing after the court sustained the objection. Therefore, this assignment of error is waived, and we are unpersuaded by appellant's argument that the court's ruling warrants the application of the "ends of justice" exception to Rule 5A:18.

## CONCLUSION

For these reasons, we affirm appellant's convictions.

*Affirmed*.